**SOUTH WESTERN OKLAHOMA DEVELOPMENT AUTHORITY, an Oklahoma public trust, and the State of Oklahoma, ex rel., Oklahoma Department of Commerce, Plaintiffs–Appellees,**

v.

**SULLIVAN ENGINE WORKS, INC., Scott Spencer, an individual, Robert Sullivan, an individual, Tommie J. Holder, an individual, Max Buchanan, an individual, and Roy Wayne Woodward, an individual, Defendants–Appellants.**

No. 80739.

Supreme Court of Oklahoma.

Jan. 23, 1996.

Mark S. Grossman, Crowe & Dunlevy, Oklahoma City, for Appellants.

Brenda Vincent, and Eric Mitts, Oklahoma Department of Commerce, Oklahoma City, Oklahoma, for Appellee, South Western Oklahoma Development Authority.

Johnny G. Beech, Mary J. Rounds, Lester, Bryant, Solano, Pilgrim & Ganz, Oklahoma City, and Anthony G. Mitchell, Talley & Talley, Hobart, for Appellee, Oklahoma Department of Commerce.

SIMMS, Justice:

Appeal from a summary judgment entered by the district court in favor of South Western Oklahoma Development Authority (Authority) and the Oklahoma Department of Commerce (Department). The Department and the Authority will be referred to collectively as "the Plaintiffs". The Plaintiffs brought this securities fraud action against several defendants including the appellants, Scott Spencer and Max Buchanan ("the Defendants"). The other defendants were either dismissed from the action or were protected from litigation by bankruptcy laws.

The district court ruled that Spencer and Buchanan had violated the provisions of 71 O.S.1991, § 408(b) by materially participating or aiding in the sale of securities by Sullivan Engine Works, Inc. The Court of Appeals determined that § 408(b) does not authorize an action against one who materially participates in selling securities without first establishing "primary liability" in the entity selling the securities. We granted certiorari to con-

sider whether § 408(b) requires "primary liability" to be established in the seller before "secondary liability" may be imposed on a material participant in securities fraud.

Although the Court of Appeals correctly determined that a plaintiff need not first obtain a judgment against the seller before bringing suit against the material participant or one who aids in the sale, the Court of Appeals' requirement of a finding of "primary liability" of the seller before "secondary liability" of the material participant may be imposed misconstrues the language of § 408(b).

We find material participants are jointly and severally liable with the seller under the terms of § 408(b) and that "primary liability" need not be adjudged by a court before bringing an action against the material participant or aider. Rather, we conclude that a plaintiff need only show that seller committed the prohibited acts of § 408(a) in its action against the material participant or aider, and may recover damages from the material participant without obtaining a judgment from seller or recovering from seller. Therefore, we vacate the opinion of the Court of Appeals. However, we find a substantial controversy as to material facts and must reverse the summary judgment of the district court and remand this matter for further proceedings.

## FACTS

Authority is a public trust engaging in efforts to facilitate private economic development in Kiowa County, Oklahoma. The Department likewise is involved in facilitating private economic development in Oklahoma.

Sullivan Engine Works was established by Buchanan and others not parties to this appeal to develop and manufacture an experimental rotary engine. Spencer later became involved in the project by investing his own funds and assisting in efforts to raise additional capital. One such source of additional capital was the Authority which loaned $799,-200.00 to Sullivan Engine Works. In return, Sullivan Engine Works issued debentures to the Authority.

Authority had received the funds from the Department which was responsible for the management and disbursement of the funds. The funds were entrusted to the Department by the U.S. Department of Energy with the stipulation that the money be invested in a manner that would benefit energy consumers. The contract between the Authority and Sullivan Engine Works recognized the goal of the governmental entities in funding research in Oklahoma dedicated to increasing the efficiency of energy use.

Plaintiffs allege that the decision to invest the funds in Sullivan Engine Works and its rotary engine was based upon falsified information provided by Spencer and Buchanan through Sullivan Engine Works. This alleged misinformation included the financial status of Sullivan Engine Works, the value of the patent for the Rotary–Vee Engine, the progress of the development of the engine, the capacity of Sullivan Engine Works to produce and deliver engines meeting certain specifications, and the existence of contracts for purchase of the engines. Moreover, the patent, Sullivan Engine Works primary asset, was transferred to Spencer, leaving the company insolvent.

The Authority eventually brought suit against Sullivan Engine Works and its officers, including Spencer and Buchanan. Authority alleged six causes of action none of which are involved in this appeal and simultaneously filed a motion for summary judgment. Defendants answered the petition and responded to the summary judgment motion. Department then joined the action and the Authority and the Department filed a joint reply brief.

Shortly before the motion was to be heard by the district court, Sullivan Engine Works filed for bankruptcy. Pursuant to statute, the action against Sullivan Engine Works was stayed, and the Plaintiffs were prohibited from continuing their action against Sullivan Engine Works, the seller of the securities.

However, along with the summary judgment briefs, the Plaintiffs filed an affidavit executed by Anthony G. Mitchell, the loan specialist and general counsel of the Authority, in which Mitchell made allegations re-

garding fraudulent conduct by Spencer and Buchanan.

Plaintiffs then amended their petition alleging individual causes of action against Spencer and Buchanan for violating 71 O.S. 1991, § 408(b) and filed a motion for partial summary judgment on these new claims. Attached to the motion was an affidavit from Roy Wayne Woodward, one of the original officers or shareholders of Sullivan Engine Works. Woodward was named as a defendant in the action but had entered into a settlement agreement with the Plaintiffs and had been dismissed from the case. In his affidavit, Woodward confessed generally that *officers and directors of Sullivan Engine Works* made "numerous false and misleading statements and representations of material facts and/or omissions of statements of material facts" in their efforts to obtain funding from the Authority.

The remaining defendants responded with briefs, a deposition of Spencer, and an affidavit from Robert Sullivan, another of the original officers and shareholders of Sullivan Engine Works, controverting the facts alleged by the Plaintiffs. The Plaintiffs replied with another affidavit from Mitchell as well as an affidavit from Tommie J. Holder, an officer and shareholder of Sullivan Engine Works who had settled with the Plaintiffs. Based on these affidavits and documents and arguments from counsel, the district court granted summary judgment to the Plaintiffs on their claims alleging Spencer and Buchanan had engaged in securities fraud and awarded damages against them in the amount of $799,200 together with interest. All remaining claims were either subsequently dismissed by the Plaintiffs or are irrelevant to this appeal.

**71 O.S.1991, § 408(b) DOES NOT REQUIRE A JUDGMENT OF LIABILITY ON THE PART OF THE SELLER BEFORE HOLDING ANOTHER INDIVIDUAL JOINTLY AND SEVERALLY LIABLE AS A MATERIAL PARTICIPANT OR AIDER IN A FRAUDULENT SALE OF SECURITIES.**

■ Title 71 O.S.1991, § 408, provides for civil liability for deceptive practices by those sellers of securities or those who aid in or materially participate in the sale of securities. It reads, in pertinent part, as follows:

"(a) Any person who:

(1) offers or sells a security in violation of Sections 201(a), 301, or 404(b) of this title, or of any rule or order under Section 402 of this title which requires the affirmative approval of sales literature before it is used, or of any condition imposed under Sections 304(d), 305(f), or 305(g) of this title, or

(2) offers or sells or purchases a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the other party not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, *is liable:*

(A) in the case of an offer or sale of a security by such means, to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at ten percent (10%) per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender, less the value of the security when the buyer disposed of it, and interest at ten percent (10%) per year from the date of disposition, or

\* \* \* \* \* \*

(b) *Every person who materially participates or aids in a sale or purchase made by any person liable under paragraph (1) or (2) of subsection (a) of this section,* or who directly or indirectly controls any person so liable, *shall also be liable jointly and severally with and to the same extent as the person so liable,* unless the person who so participates, aids or controls, sustains the burden of proof that he did not

know, and could not have known, of the existence of the facts by reason of which liability is alleged to exist. There shall be contribution as in cases of contract among the several persons so liable." (Emphasis added)

Spencer and Buchanan assert that § 408(b) requires the person offering or selling securities in subsection (a) be adjudged liable before liability can be imposed on a person who materially participates or aids in the sale of securities. They continue that because judgment cannot be entered against the seller of the securities, Sullivan Engine Works, due to the automatic stay provision of the bankruptcy laws, this action against them as material participants is prohibited.[1]

Spencer and Buchanan read the term "liable" in § 408(b) to mean that a final judgment has been rendered against the seller, but the language of § 408 does not support their reading. Section 408(b) states that a person who materially participates or aids in a sale "made by any person *liable* under paragraph (1) or (2) of subsection (a)" is jointly and severally liable with that seller.

The crucial question is what makes a seller "liable" under subsection (a). In essence, Subsection (a)(2) of 408, provides that any person who offers or sells "a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, ... is liable" to the person buying the security. The mere fact that the statute states that a person selling a security by means of an untrue statement *is liable* does not mean that that person has already been adjudged liable by a court of law. Instead, it means that *if* a plaintiff proves that the seller made the untrue statements then the seller is liable for damages to the plaintiff.

In *Chicago, Rock Island & Pac. R.R. v. Davila*, 489 P.2d 760 (Okla.1970), this Court construed a statute regarding the joinder of claims which included the language "any person who is liable on such claim." One party

claimed that this language required an indemnitor be "actionably liable", i.e. the indemnitee has paid the loss, before being joined in the suit. In holding otherwise, this Court stated:

> "The words 'liable' and 'liability' have a number of different meanings that cannot be rigidly restricted to 'present actionability' so as to exclude the idea of uncertainty, futurity or contingency. Rather, when we refer to one as 'liable', we denote or describe 'the condition of being responsible for a possible or actual loss, penalty, evil, expense or burden'....

> In *Cochran v. United States,* 157 U.S. 286, 15 S.Ct. 628, 39 L.Ed. 704 [ (1895) ], it is stated that 'We know of no definition of the word 'liability', either given in the dictionaries or as used in the common speech of men, which restricts it to such as are absolute, or excludes the idea of contingency. In fact, it is more frequently used in the latter sense than in the former, as when we speak of the liability of an insurer or a common carrier, or the liability to accidents or to errors; * * *.'

> We hold that the phrase 'any person who is liable on such a claim' does not operate to limit impleader contemplated by Sec. 323 to those persons who are 'actionably liable' at the time the third party claim is sought to be litigated but includes also those persons who 'may be liable'. 489 P.2d at 764 (Citations omitted). *See also Triton Ins. Co. v. Stephenson,* 516 P.2d 1338, 1341 (Okla.1973) (reaffirming *Davila* and holding "[t]he word liable is used to denote one who may be responsible for a possible or actual loss, penalty, evil, expense or burden. Impleader is not limited to those actionably liable at the time the third party claim is sought to be litigated and includes those who may be liable.")

Therefore, "liable" has been construed in terms of a person being subject to legal suit for their actions. It is this understanding of

---

**1.** The automatic stay provision, 11 U.S.C. § 362, provides for the filing of a petition in bankruptcy to operate as an automatic stay to all judicial or administrative proceedings against the debtor filing the petition. A valid judgment may not be

rendered against a party under the protection of the automatic stay. *Bailey v. Campbell,* 862 P.2d 461 (Okla.1991); *Culie v. Arnett,* 765 P.2d 1203 (Okla.1988).

the term "liable" that we find the Legislature intended in § 408(a). We find the phrase "is liable" denotes that if the seller committed the specific acts of fraud or misinformation, an action for damages may be instituted against the seller for the violation. Such a construction is the only one which allows the terms to be given their ordinary meaning, and terms of statutes should be interpreted according to their plain and ordinary meaning unless contrary to the purpose and the intent of statute. *Medina v. State*, 871 P.2d 1379 (Okla.1993). In addition,

"[w]here a word or phrase is used in different parts of a statute or act it will be presumed to have the same meaning throughout; and where its meaning in one instance is clear, this meaning will apply elsewhere therein, unless it plainly appears from the whole statute the Legislature intended to use it in a different sense." *Stewart v. Rood*, 796 P.2d 321, 329, n. 12 (Okla.1990).

It is clear the Legislature intended the term "liable" in § 408(a) to mean that the seller has committed acts which warrant the bringing of a civil action. Because that same term is used in subsection (b) as well and refers to liability of the seller under subsection (a), we further find that the term has the same meaning in both subsections. *Id.*

The Defendants counter by pointing to language in *Nikkel v. Stifel, Nicolaus & Co.*, 542 P.2d 1305 (Okla.1975), in which we construed § 408. In *Nikkel*, the plaintiff, Nikkel, purchased Mayflower stock through Stifel, Nicolaus & Co. (Stifel) and its broker, Oaks. When Nikkel wished to purchase more stock, Oaks informed him that Stifel *no longer handled* Mayflower stock, but that he would set them up with another broker, Cole, that did handle Mayflower stock. Cole took and filled the stock order which later turned out to be unregistered and non-exempt, i.e. in violation of the Oklahoma Securities Act.

Nikkel brought suit under § 408 to recover civil damages from Oaks, and his firm, Stifel, and from Cole and his firm, Don Anderson & Co. (Anderson), for the securities violation. The district court entered judgment against Oaks and Stifel as the *sellers* but denied judgment against Cole and his firm. On appeal, Oaks and Stifel argued that *they were not the sellers* of the last sale of stock, but rather, Cole and his firm, Anderson, were the sellers.

In reversing the district court's judgment against Oaks and Stifel, we concluded:

"Section 408(b), supra, places liability on one who materially participates or aids in a sale made by one liable under subsection (a)....

We agree with appellants' position. *As a prerequisite for liability by a participant or aider in a sale under subsection (b), supra, the person making the sale must be liable under subsection (a).* Cole and Anderson were found not liable. That part of the judgment is final. We have heretofore determined in this opinion they are the only persons who could have been liable under subsection (a), supra. The evidence does establish Oaks and Stifel as persons who aided Cole and Anderson in making the last two Mayflower stock sales. Oaks and Stifel are not charged with civil liability under subsection (b), supra, for Cole and Anderson were not held liable under subsection (a), supra." 542 P.2d at 1308–09 (Citations omitted)

(Emphasis added).

The question in *Nikkel* was whether Oaks and Stifel could be liable under § 408(b) as material participants or aiders in the sale. Nikkel admitted that he purchased the stock from Cole and Anderson because Oaks and Stifel no longer handled it. Clearly, from this admission, *Cole and Anderson were the sellers of the stock*, and if anyone would have been liable under § 408(a), it was Cole and Anderson as we noted in the opinion. However, the district court had already found Cole and Anderson *not liable* under § 408(a), and Nikkel did not appeal that ruling. Therefore, the judgment finding Cole and Anderson not liable was final.

Contrary to the assertion of Spencer and Buchanan, *Nikkel* does not teach that before a material participant can be sued for securities fraud under § 408(b) the plaintiff must first successfully sue the seller under § 408(a). Section 408(b) provides that where the seller is liable, those who materially par-

ticipated in the sale are jointly and severably liable. A plaintiff suing under § 408(b) must only show that the seller is "liable" under § 408(a), and *Nikkel* requires nothing more than such a showing. In other words, *Nikkel* does not demand that the plaintiff produce a judgment of liability on the part of the seller before allowing suit under § 408(b). Rather, Cole and Anderson had been adjudged *not* liable under § 408(a), and such judgment was final. Since they were the only ones who could be liable, Nikkel had no recourse against anyone, including Oaks and Stifel, under § 408(b).

Therefore, *Nikkel*'s fundamental holding was that "a prerequisite for liability by a participant or aider in a sale under subsection (b)" was that the seller "must be liable under subsection (a)." 542 P.2d at 1309. Nowhere in *Nikkel* did we hold that seller's liability must be reduced to a judgment. The plaintiff must only show that the seller is "liable."

Thus, in order to hold a material participant or aider liable for their part in the fraudulent sale of securities, the plaintiff must show two things: (1) that the defendant was a material participant or aided in the sale of securities by a seller, and (2) that the seller is "liable" under § 408(a).[2] Although a judgment entered against seller under § 408(a) would clearly show seller liability, the plaintiff need not present such a judgment in order to prove that the seller is "liable" as that term is used in § 408. The plaintiff need only prove that seller has committed the acts or omissions which may result in liability according to subsection (a).[3]

The statute calls for joint and several liability between the seller and the material participant. The use of the phrase "joint and several liability" precludes primary and secondary liability. In other words, the Defen-

dants *are not secondarily liable* to Sullivan Engine Works. Rather, the seller and the material participant may each be held accountable for the securities sales violation. As long as the requirements of § 408(b), as explained above, are proven, a plaintiff may bring an action against the material participant only or against the seller as well.

"Where liability is joint and several, judgment will lie against one or all of the defendants." *Rogers v. Citizens Nat'l Bank in Okmulgee*, 373 P.2d 256, 257 (Okla.1962) (Syllabus by the Court).

Thus, the statute is clear that the seller and the material participant are both liable for damages, and we have shown that the language of the statute allows for judgment to be had against the material participant without judgment against the seller as long as the plaintiff proves the seller defrauded the plaintiff in the sale of securities.

■ In a secondary proposition the Defendants point to a recent U.S. Supreme Court case, *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, —— U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), for the proposition that private civil liability under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, does not extend to persons alleged to have aided and abetted in the violation of that provision. Relying on this change in the U.S. Supreme Court's view of liability for aiding and abetting securities violations, the Defendants urge us to interpret 71 O.S.1991, § 408(b) in a similar fashion.

We decline to do so because, unlike § 408, § 10(b) does not expressly authorize a cause of action. Rather, the federal courts had in the past held that the provisions of § 10(b) *implied* a cause of action for aiding and abetting, and the U.S. Supreme Court was

---

**2.** The elements of seller's liability in § 408(a) is that seller sold

"a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the other party not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and

in the exercise of reasonable care could not have known, of the untruth or omission ..."

**3.** Of course, it would be impossible for a plaintiff to show the second prong, that of seller liability, where a court has already adjudged seller to *not be* liable in that action or a previous one as was the case in *Nikkel*. In such a scenario, the plaintiff would be collaterally estopped from having the issue litigated again. *Wilson v. Kane*, 852 P.2d 717 (Okla.1993).

overturning that construction of § 10(b). Section 408 clearly provides for a private cause of action for those who materially participate or aid in the fraudulent sale.

In addition, § 10(b) is not the federal equivalent of § 408(b). Instead, the federal corollary to § 408 is found at § 12 of the Securities Act of 1933 (15 U.S.C. § 77*l*). *See generally* Dorwart, F. and Holden, D., "An Overview of the Oklahoma Securities Act," 25 Okla.L.Rev. 184 (1972). *Central Bank* is not dispositive of the case before us.

## SUMMARY JUDGMENT WAS IMPROPER

Summary judgment is appropriate only where it appears that there is no substantial controversy as to any material fact and that one party is entitled to judgment as a matter of law. *Sellers v. Oklahoma Publishing Co.*, 687 P.2d 116 (Okla.1984); *Daugherty v. Farmers Coop. Ass'n*, 689 P.2d 947 (Okla. 1984). On review, all inferences and conclusions to be drawn from the underlying facts will be reviewed in the light most favorable to the party opposing the motion for summary judgment. *Daugherty, supra; Redwine v. Baptist Medical Center of Oklahoma, Inc.*, 679 P.2d 1293 (Okla.1983).

■ The motion for partial summary judgment ultimately became a "swearing match" in which the Plaintiffs produced affidavits and other documents showing securities fraud perpetrated by Sullivan Engine Works and the Defendants. The Defendants countered with documents explaining the circumstances of the case in a way which showed no fraud occurred. In essence, when viewed in the light most favorable to the Defendants, we find material facts are in substantial controversy. Consequently, the Plaintiffs were not entitled to judgment as a matter of law, but must prove their case to the trier of fact. This matter must be remanded to the district court for the jury to decide.

For the above and foregoing reasons, the opinion of the Court of Appeals is VACATED, the judgment of the district court REVERSED, and this case REMANDED to the district court for further proceedings consistent with this opinion.

ALMA WILSON, C.J., KAUGER, V.C.J., and LAVENDER, SIMMS, HARGRAVE, OPALA, SUMMERS and WATT, JJ., concur.