2004 OK 20

**In the Matter of the ESTATE OF Dewey Lawrence HUGHES, deceased,**

**Robert S. Flaniken and Robert S. Flaniken, P.C., Appellants,**

v.

**Peggy L. Hepler, Personal Representative, Appellee.**

No. 97,827.

Supreme Court of Oklahoma.

March 30, 2004.

As Corrected April 8, 2004.

---

Michael H. Brady, Ronald Arthur Schaulat, Oklahoma City, OK, for appellants.

Brigid F. Kennedy, Oklahoma City, OK, for appellee.

BOUDREAU, J.

¶ 1 The dispositive question presented on certiorari is whether the probate court abused its discretion in vacating the order allowing final accounting, determining heirship and authorizing distribution of the estate of Dewey Lawrence Hughes, deceased. We answer in the negative.

## I. Background

¶ 2 Peggy L. Hepler (Hepler) was not related to Dewey Lawrence Hughes (Hughes). In early 1998, Hepler became acquainted with Hughes through her job at a bank where Hughes had a checking account. At that time, Hughes was an elderly man who was going blind. On several occasions, Hughes asked Hepler to come to his house and help him with personal matters. Hepler went to Hughes' residence and assisted him in paying his bills and other such tasks. Sometime thereafter, Hughes caused his attorney to prepare a durable power of attorney naming Hepler as his attorney in fact. Also on December 13, 2000, Hughes executed his will naming Hepler as the personal representative and the sole beneficiary of his estate.

¶ 3 Hughes died April 27, 2001. Hughes was survived by nieces and nephews. Hepler employed Robert S. Flaniken (Flaniken) to represent her in regards to Hughes' will. Initially, Hepler and Flaniken believed Hughes' collateral heirs would contest the will. On May 9, 2001, Hepler and Flaniken entered into a contract of employment in which Flaniken agreed to represent Hepler individually and in her capacity as personal representative and Hepler agreed to pay Flaniken one third of the gross amount due Hepler upon finalization of the probate of the will or forty percent of her recovery in the event of a will contest.

¶ 4 On June 21, 2001, Flaniken initiated a proceeding to probate the estate of Dewey Lawrence Hughes, deceased, in the District Court of Oklahoma County. The probate court admitted Hughes' will to probate and appointed Hepler as the personal representative of the Hughes estate. No contest to the will materialized and the probate proceeded routinely. The final accounting filed in the probate itemized Flaniken's legal fees and costs as expenses of administration at $13,000.00. On December 28, 2001, six months after Flaniken initiated the probate, the judge signed the order allowing final accounting, determining heirship and authorizing distribution. Flaniken did not immediately file the order in the court clerk's office.

¶ 5 On December 29, 2001, Hepler paid Flaniken $96,712.23 for attorney fees, an amount equal to 33–1/3% of the gross amount of the personal property due Hepler at the conclusion of the probate, less the $13,000.00 that had been approved by the probate court and paid to Flaniken. Flaniken also demanded Hepler pay him an additional $38,857.00, the amount equal to 33–1/3% of the gross amount of real property due Hepler at the conclusion of the probate. Hepler refused.

¶ 6 On March 11, 2002, Flaniken filed the order allowing final accounting which the judge had signed on December 28, 2001. On March 22, 2002, Hepler filed a motion requesting that the order allowing the final accounting be vacated and that Flaniken be enjoined from disposing of the $96,712.23. Hepler alleged that Flaniken perpetrated a fraud on the probate court when he failed to disclose to the court the fee agreement for his representation of Hepler as the personal representative. After a hearing, the probate court sustained the motion for an order restraining Flaniken from disposing of any of the remaining funds received from Hepler. Having allowed time to file briefs, the probate court, on May 31, 2002, entered an order sustaining Hepler's motion to vacate and enjoining both Flaniken and Hepler from disposing of funds from the Hughes estate.

¶ 7 Flaniken timely appealed. The Court of Civil Appeals found that Hepler's motion to vacate was grounded in events that occurred after the probate court's order distributed the estate assets to her as the sole beneficiary and therefore, the attorney fee dispute was not cognizable in the probate proceeding. We previously granted Hepler's petition for writ of certiorari.

## II. Standard of Review

¶ 8 The standard of review of an order granting a motion to vacate, timely filed under 12 O.S.2001, § 1031.1, is whether the trial court abused its discretion. *Patel v. OMH Medical Center, Inc.*, 1999 OK 33, ¶ 20, 987 P.2d 1185, 1194. The test for measuring the legal correctness of a vacation order is whether sound discretion was exercised upon sufficient cause shown. *Schepp v. Hess*, 1989 OK 28, ¶ 11, 770 P.2d 34, 39. Judicial discretion is abused when it is exercised to an end or purpose not justified by, and clearly against, reason and evidence, *Patel*, 987 P.2d at 1194, or when a trial court errs with respect to a pure, unmixed question of law, *Christian v. Gray*, 2003 OK 10, ¶ 43, 65 P.3d 591, 608; *and, Jones, Givens, Gotcher & Bogan, P.C. v. Berger*, 2002 OK 31, ¶ 5, 46 P.3d 698, 701.

## III. The attorney fee agreement

¶ 9 In this case, Flaniken and Hepler entered into an attorney fee agreement. The pertinent provisions of that agreement, entitled *Contract of Employment*, read as follows:

THIS CONTRACT, made this 9th day of May, 2001, by and between Peggy L. Hepler, **individually and as the Personal Representative** for the Estate of Dewey L. Hughes, hereinafter "Client" and R.S. Flaniken, P.C., attorneys at law, hereinafter "Attorneys" by which it is agreed as follows:

. . .

3. **In consideration for the services performed** and to be performed by Attorneys, Client agrees to **pay to the Attorneys a sum of money equal to 33–1/3% of the gross amount due the Client upon the finalization of the probate of the Will.** Additionally, any and all necessary costs associated with getting the probate case settled or tried which the Attorneys incur on behalf of the Client, . . . [will] be deducted from the Client's future settle-

ment and/or judgment. In the event Client fires Attorneys, all expenses and fees shall be paid by Client before Client's file and papers are released by Attorneys. **In the event that there are filed, in connection with the probate of the Will, any competing beneficial inheritance claims to the assets or estate of the said Hughes, or any action filed seeking to set aside the Will, the aforesaid percentage of recovery to be paid to Attorneys shall be 40%.**

.... (Emphasis added.)

¶ 10 On its face, this contract authorizes Flaniken to represent Hepler in two separate capacities, as an individual and as personal representative of an estate. The contract also divides the fee arrangement for Flaniken's representation of Hepler into two separate categories: 1) his representation for which he is entitled to a percentage-based fee of 33 and 1/3% of the gross amount due Hepler upon finalization of the probate of the will; and 2) his representation for which he is entitled to a percentage-based fee of 40% of the gross amount recovered by Hepler. The enhanced fee (40%) for representing Hepler is contingent upon: 1) the **filing** of "any competing beneficial inheritance claims to the assets or estate of the said Hughes"; or 2) the **filing** of "any action ... seeking to set aside the Will". Neither of these contingencies occurred and Flaniken has not attempted to collect the 40% enhanced or contingent fee for representing Hepler. The contract does not distinguish Flaniken's rate of compensation for representing Hepler as personal representative from that for representing her individually.

**IV.  The probate court has broad discretion to grant or deny a motion to vacate timely filed under 12 O.S.2001, § 1031.1, and the probate court did not abuse its discretion in vacating the order allowing final accounting in this case.**

¶ 11 On March 11, 2002, Flaniken filed the order allowing final accounting which the judge had signed on December 28, 2001. On March 22, 2002, Hepler filed a motion requesting that the order allowing the final accounting be vacated and that Flaniken be enjoined from disposing of the $96,712.23. Hepler filed her motion to vacate within thirty days from the filing of the order allowing the final accounting and thus invoked the now codified term-time authority of the court to correct, open, modify or vacate its order under 12 O.S.2001, § 1031.1.[1]

¶ 12 Under 12 O.S.2001, § 1031.1, a trial court retains plenary control over its terminal decision for a thirty-day period after the decision is filed with the court clerk. During this thirty-day period, a trial court enjoys the unfettered common-law term-time authority to control a judgment or decree with very broad and almost unlimited discretion. *Schepp*, 770 P.2d at 38. The trial court's exercise of its term-time authority over its judgment or decree is not limited to specific grounds and once invoked during the thirty-day period, the trial court may exercise authority over its judgment or decree after the thirty-day period expires. *Id.* A trial court's term-time authority extends to its orders and decrees in probate proceedings. *Matter of Estate of Goyne*, 1986 OK 69, ¶ 10, 733 P.2d 391, 394, wherein this Court recognized that the provisions of § 1031.1 would be available in proceedings regarding the administration of estates.

¶ 13 In evaluating the probate court's response to the § 1031.1 motion to vacate, we observe the following. Flaniken represented to the court in the final accounting that his costs and fees as attorney for the personal representative was $13,000.00 and requested that the court approve that amount.[2] Flaniken failed to disclose to the court either the existence or the terms of his written contract with Hepler as personal representative. The contract provided that Flaniken was entitled to a sum of money equal to 33 and 1/3% of

---

1.  The first sentence in § 1031.1(B) reads as follows: "On motion of a party made not later than thirty (30) days after a judgment, decree, or appealable order prepared in conformance with Section 696.3 of this title has been filed with the court clerk, the court may correct, open, modify, or vacate the judgment, decree, or appealable order."

2.  Paragraph numbered 9 of the final accounting filed November 29, 2002, reads: "9. The fees,

the gross amount due Hepler upon finalization of the probate of the Hughes will. The probate court signed an order allowing the final accounting without any knowledge of the written contract between Flaniken and Hepler. Flaniken received $109,712.23 as a portion of his attorney fees more than two months before he filed the order allowing final accounting. Flaniken continues to demand another $38,857.00 in attorney fees from Hepler under the contract.

¶ 14 After being informed of these circumstances, the probate court vacated his order allowing final accounting and required that the final accounting be reset for further hearing. In our view, the probate court's response to the motion to vacate was not an abuse of discretion. The court was entitled to examine the written contract of employment between Flaniken and Hepler that Flaniken withheld. The contract clearly authorizes Flaniken to represent Hepler in two separate capacities, as personal representative and as an individual. The contract, however, does not clearly distinguish Flaniken's rate of compensation for representing Hepler as personal representative from that for representing her individually. The contract is ambiguous and at the very least, there is a question as to which provisions of the contract apply to Flaniken's representation of Hepler as personal representative. Once this is determined, there may be a question as to whether the applicable provisions are reasonable.[3]

¶ 15 Flaniken concedes that the probate court has jurisdiction over the expense of the attorney hired by the personal representative to assist in the administration of the estate.[4] However, Flaniken, citing *Estate of Estes*, 1999 OK 59, 983 P.2d 438, contends that the probate court is without authority to modify or determine the reasonableness of a fee contract between an attorney and a beneficiary of an estate. Flaniken's argument in this regard conveniently ignores the fact that his employment contract with his client is more than an agreement with a beneficiary of the Hughes estate. It is also an agreement to represent the personal representative of the estate. A probate court clearly has authority to examine a written contract for employment between an attorney and the personal representative before approving the attorney fee as an expense of administration in the final accounting.[5] *See, Matter of the Estate of Bartlett*, 1984 OK 9, ¶ 28, 680 P.2d 369, 379.

## V. Unaddressed issues

¶ 16 Flaniken raised and briefed multiple issues and errors in this appeal. Reversing on the jurisdictional issue, the Court of Civil Appeals noted it need not address the other issues and errors preserved by Flaniken. Pursuant to *Hough v. Leonard*, 1993 OK 112, 867 P.2d 438, and Okla.Sup.Ct.R. 1.180, 12 O.S.2001, ch. 15, app., we address the other issues preserved in Flaniken's brief in chief.

costs and expenses of R.S. Flaniken, P.C. as attorneys from May 9, 2001 through hearing of the Final Account are $11,487.62 fees and $1,512.38 costs and expenses for a total of $13,000.00. Said fees, costs and expenses should be approved and ordered paid."

3. The reasonableness of the fee for the attorney's services in the administration of the estate lies in the sound discretion of the probate court. 58 O.S.2001, § 525; *Matter of the Estate of Bartlett*, 1984 OK 9, ¶ 32, 680 P.2d 369, 379.

4. The district court's probate jurisdiction is fixed by statute, 58 O.S.2001, § 1, and its jurisdiction extends to the attorney fees charged for the administration of the estate, 58 O.S.2001, § 525. In this regard, we note that the probate statutes provide that the district court has jurisdiction to exercise all probate powers conferred by law, 58 O.S.2001, § 1(A)(9); and the district court's probate jurisdiction is concurrent and coextensive

with its unlimited subject matter jurisdiction to determine the property that is subject to probate jurisdiction, title to such property, and the rights of all persons with respect to such property, 58 O.S.2001, § 1(C).

5. The probate statutes provide that in a final accounting, the personal representative must, under oath, inform the probate court whether the income has been received, expenses have been lawfully made, claims have been approved and paid, funeral expenses, taxes and costs of administration have been paid, and the estate is ready for closing, 58 O.S.2001, § 541; and after the entering of an order allowing final accounting, determining heirship and authorizing distribution of the estate, the probate court's review of the estate continues until the representative is discharged. 58 O.S.2001, § 691.

¶ 17 Flaniken contends that the probate court erred when it failed to provide an evidentiary hearing on the motion to vacate, citing *Patel v. OMH Medical Center, Inc.*, *supra*. The record on appeal demonstrates that Flaniken had an opportunity to present evidence at the hearing on temporary injunction on March 26, 2002. He questioned Hepler extensively about her relationship with Hughes, her knowledge of Hughes' collateral heirs, and the employment contract. At the conclusion of the hearing, the probate court permitted briefs addressing Flaniken's challenge to its jurisdiction. After submission of the briefs, the probate court vacated its order allowing final accounting.

¶ 18 Flaniken contends that the probate court should have conducted another hearing on the motion to vacate. Under the circumstances of this case, we disagree. The facts that support the vacation order were established at the hearing on the temporary injunction and are undisputed. Flaniken and Hepler entered into a written fee contract in which Flaniken agreed to represent Hepler as personal representative. Flaniken failed to disclose to the probate court either the existence or the terms of this written fee contract. The probate court entered the order allowing the final accounting without any knowledge of the written fee contract.

¶ 19 Flaniken's reliance on *Patel* is misplaced. *Patel* holds that a vacation proceeding under 12 O.S.2001, § 1031 is a post-judgment remedy governed by the statute and not subject to summary judgment process. *Patel*, 987 P.2d at 1193. While *Patel* explains that parties must be given an opportunity to present evidence in a vacation proceeding where material facts are controverted, it also teaches that there is no impediment to the consideration of undisputed facts and that an evidentiary hearing is not required in every vacation proceeding. *Id.*

¶ 20 Flaniken also contends that the probate court should not have considered the motion to vacate because Hepler failed to give notice to the heirs and creditors of the Hughes estate, relying on *Allen v. Allen*,

1948 OK 183, 201 Okla. 442, 209 P.2d 172. *Allen* teaches that those who are entitled to notice in a vacation proceeding are the parties whose rights may be prejudiced by a change in the judgment. *Allen.* is inapposite because the collateral heirs received nothing under the order allowing final accounting and accordingly their rights could not be prejudiced by a change in the order.[6]

¶ 21 Finally, Flaniken argues that the vacation statutes do not provide a basis for relief for a party against his/her attorney. This argument is without merit in this case where the attorney fee for the personal representative lies within the sound discretion of the probate court. *See Matter of the Estate of Bartlett*, 680 P.2d at 379, wherein this Court said that the probate court may allow an attorney fee even over the objection of the personal representative.

### VI.  Conclusion

¶ 22 We hold that the probate court did not abuse its discretion in vacating the order allowing final accounting, determining heirship and authorizing distribution of the estate of Dewey Lawrence Hughes, deceased, pursuant to its timely-invoked term-time authority under 12 O.S.2001, § 1031.1.

**OPINION OF THE COURT OF CIVIL APPEALS VACATED; ORDER OF THE DISTRICT COURT AFFIRMED; CAUSE REMANDED FOR FURTHER PROCEEDINGS.**

WATT, C.J., and HODGES, LAVENDER, KAUGER, BOUDREAU and EDMONDSON, JJ., concur.

OPALA, V.C.J., by separate writing, and HARGRAVE and WINCHESTER, JJ., concur in result.

OPALA, V.C.J., concurring in result.

I concur in the result reached today but not in the court's pronouncement.

---

6. Although we reject Flaniken's argument that the vacation order is void under *Allen* for lack of notice to the Hughes heirs, on remand, the probate court should require notice to the Hughes heirs of the hearing to reconsider the final accounting. 58 O.S.2001, § 553. *See also Booth v. McKnight*, 2003 OK 49, ¶¶ 16–22, 70 P.3d 855, 861–63.