2015 OK CIV APP 46

CHASE HOME FINANCE LLC, Successor by Merger to Chase Manhattan Mortgage Corporation, Plaintiff/Appellant,

v.

Billy GRAVITT a/k/a Bill L. Gravitt and Jane Doe, his spouse, if married; and Occupants of the Premises, Defendants/Appellees,

and

Arvest Bank f/k/a McIlroy Bank & Trust, Successor by Merger to Superior Bank; and Capital One Bank, N.A., Defendants.

No. 111,671.

Court of Civil Appeals of Oklahoma, Division No. 4.

Jan. 27, 2015.

Rehearing Denied April 24, 2015.

Brian J. Rayment, Kivell, Rayment and Francis, P.C., Tulsa, Oklahoma, for Plaintiff/Appellant.

Jeff Potts, Jeff Potts Law Office, Muskogee, Oklahoma, for Defendant/Appellee Billy Gravitt.

DEBORAH B. BARNES, Judge.

¶ 1 Plaintiff/Appellant Chase Home Finance LLC, Successor by Merger to Chase Manhattan Mortgage Corporation (Chase Home) appeals from an Order of the district court granting the petition to vacate a 2009 foreclosure judgment filed by Defendant/Appellee Billy Gravitt, a/k/a Bill L. Gravitt (Gravitt). We vacate the Order and remand the cause for further proceedings.

**BACKGROUND**

¶ 2 Chase Home filed its foreclosure action on February 29, 2008, against Gravitt and Arvest Bank, among others. Chase Home claimed that on December 4, 2003, Gravitt executed and delivered a note to Superior Bank for $50,000 secured by a mortgage on property located at 610 N. Washington Avenue in Wagoner Oklahoma (subject property).[1] Chase Home alleged it was the holder of the note and mortgage through mesne assignments of record, Gravitt was in default on the note since September 1, 2007, and $47,594.31, plus interest and other expenses were due from Gravitt on the note. Attached to the petition are copies of the note and mortgage. Further, Chase Home alleged that Arvest Bank, "successor by merger to Superior Bank," may claim some right, title or interest in the subject property, which if claimed, is subordinate to Chase Home's claim because of a defective assignment, mortgage, and modification.[2]

¶ 3 As to the exhibits attached to the petition, the note executed by Gravitt and Superior Bank contains several endorsements, none of which is dated, but which are listed as follows: upper left endorsement, "Without recourse, pay to the order of: Chase Manhattan Mortgage Corporation Arvest Mortgage Company Lowell, Arkansas, By: s/ Gai Hale, Senior Vice Pres."; lower left endorsement, "Pay to the Order of Chase Manhattan Mortgage Corporation Without Recourse by Chase Manhattan Mortgage Corporation Attorney–in–Fact for Superior Bank/Arvest Mortg. Co. under contract By s/ Terri Mason its Authorized Assistant Secretary"; lower right endorsement, "Pay to the Order of (in blank) Without Recourse Chase Manhattan Mortgage Corporation By s/ Terri Mason/Asst. Secretary." The mortgage, also dated December 4, 2003, was recorded in the Wagoner County Clerk's Office on December 10, 2003, and names Superior Bank as the

---

1. The legal description of the property is as follows: "South 100 feet of Lot Four (4) and South 100 feet of West 88 feet of Lot Three (3), Block Two Hundred Four (204), CITY OF WAGONER, Wagoner County, State of Oklahoma, according to the recorded plat thereof."

2. Attached to the petition are the referenced assignment, mortgage, and mortgage modification.

lender and the entity to whom Gravitt mortgaged the subject property to secure payment of the note.

¶ 4 The alleged "defective assignment" to which Chase Home referred in its petition was executed on February 13, 2004, from Superior Bank/Arvest Mortgage Company to Chase Manhattan Mortgage Corporation. This assignment is an assignment of the mortgage held by Superior Bank on the subject property, "together with the Note," and was signed by Gai Hale, Senior Vice President for Superior Bank/Arvest Mortgage Company. This assignment was filed with the county clerk on February 24, 2004. The alleged defective mortgage and mortgage modification were executed by Gravitt to Arvest Bank on December 26, 2003,[3] and October 8, 2004,[4] respectively, and secured payment for an indebtedness incurred by Gravitt with Arvest Bank by a mortgage on, among other property, the subject property.

¶ 5 In its answer, Arvest Bank alleged it had no knowledge or belief as to any of Chase Home's allegations and thus denied the allegations, except Arvest Bank claimed an interest in the subject property, and prayed that Chase Home's petition be dismissed, the trial court determine the order of priorities, and Arvest Bank be awarded relief. It also asserted a cross-claim and counterclaim against Chase Home and Gravitt, among other Defendants. Arvest Bank alleged it had a "first and superior lien to all other parties" on the subject property, among other properties, by virtue of a mortgage executed by Gravitt to Arvest Bank on December 26, 2003, to secure payment of a note in the amount of $27,184 plus interest to Arvest Bank from Gravitt. Arvest Bank alleged a renewal of the note and mortgage was executed by Gravitt on October 8, 2004.[5] Arvest Bank alleged any claim or interest held by Chase Home to the subject property was "subordinate and inferior to the mortgage lien" it claimed. None of the documents Arvest Bank attached to its answer and counterclaim mention Arvest Mortgage Company. Among other things, Arvest Bank asked for judgment against Gravitt for a sum, including unpaid premiums and accrued interest, sought foreclosure of its mortgage on the subject property, and sought the trial court's declaration that all claims to the subject property are junior and inferior to its mortgage.

¶ 6 On July 22, 2008, Chase Home filed its answer to Arvest Bank's pleading reasserting the allegations in the petition, and filed a motion for summary judgment against Gravitt.

¶ 7 On July 29, 2008, Gravitt filed his answer to Chase Home's petition in which he denied generally all of Chase Home's allegations except that Chase Home is a duly organized corporation authorized to transact business in Oklahoma. He also alleged various affirmative defenses. Gravitt also filed an answer to Arvest Bank's cross-claim, including affirmative defenses, and filed a cross-claim against Arvest Bank alleging and seeking damages for negligence, fraud and constructive fraud, intentional infliction of emotional distress, undue influence and breach of the duty of good faith and fair dealing, libel and slander and damage to credit, and damages as to all counts. The underlying bases for these claims for damages resulted from the actions of Rhonda Harris (Harris) who Gravitt alleged was a former employee of Superior Bank and then an employee of Arvest Bank "upon Arvest's acquisition of Superior Bank." Gravitt alleged Harris was terminated from employment by Arvest Bank in 2007 and that during her employment she, among other illegal and fraudulent acts, forged Gravitt's signature on the October 8, 2004 loan modification and Harris received loan proceeds in excess of $16,000 as a result of the forged loan modification. Gravitt attached no documents to his pleading and no mention is made of Arvest Mortgage Company in his pleading.

---

**3.** It was filed with the county clerk's office on January 16, 2004.

**4.** The modification was filed with the county clerk's office on October 28, 2004.

**5.** Arvest Bank attached to its pleading the same mortgage and mortgage modification exhibits Chase Home attached to its petition, but in addition attached the notes secured by those mortgages.

¶ 8 On January 26, 2009, Gravitt filed his "Confession of Summary Judgment filed by [Chase Home]," in which he stated "he has no facts to dispute the statement of facts as presented by [Chase Home] in its Brief and Statement in Support of [its] Motion for Summary Judgment as filed on . . . July 22, 2008."

¶ 9 The trial court entered its judgment on February 24, 2009, granting summary judgment to Chase Home against Gravitt. The trial court granted judgment *in personam* against Gravitt, foreclosed the mortgage on the subject property, and directed an order for Sheriff's Sale. The foreclosure judgment specifically states that at the hearing for summary judgment, Chase Home "introduced its evidence, including its [n]ote and [m]ortgage herein sued upon," and the trial court found Chase Home was the holder of the note and mortgage. The court found Gravitt was in default and that the amount, including interest, due on the note since September 1, 2007, was $47,594.31. In sustaining the motion, the trial court stated there was no just reason to delay final judgment as to Chase Home's claims. The court also reserved Gravitt's cross-claim against Arvest Bank for adjudication at a later date.

¶ 10 On May 24, 2011, Chase Home filed its Alias Motion to Confirm Sheriff's Sale of the subject property on April 28, 2009. On June 20, 2011, Gravitt filed his objection to confirm Sheriff's Sale alleging the automatic stay in his bankruptcy action had not been lifted and that the bankruptcy was not closed and was then pending before the federal bankruptcy court.[6]

¶ 11 On August 1, 2011, the trial court issued its order confirming Sherriff's Sale. Ten days later, on August 11, 2011, Gravitt filed a Motion to Vacate Judgment and Confirmation of Sheriff's Sale. Gravitt argued the "record" was devoid of evidence that Chase Home was the owner of the note and mortgage and, therefore, it does not have the right to enforce the note and foreclose the mortgage, citing as authority *BAC Home Loans Servicing, L.P. v. White*, 2011 OK CIV APP 35, 256 P.3d 1014 (Approved for Publication by Order of the Supreme Court). Gravitt argued no evidence was presented that the note was endorsed to Chase Home or in blank and argued that the chain of endorsement is fatally flawed because there was no endorsement by an officer of Superior Bank. Absent evidence of ownership of the note, Gravitt argued the trial court's grant of summary judgment to Chase Home on the note and foreclosure of the subject property was improper and the Sheriff's Sale should be set aside.[7] Gravitt subsequently filed a Petition to Vacate the foreclosure action and confirmation of Sheriff's Sale asserting essentially the same allegations and arguments

6. On June 4, 2009, Gravitt filed Chapter 13 bankruptcy which was converted to Chapter 7 bankruptcy on December 30, 2009.

7. In further support of his contention that Chase Home did not have evidence of its ownership of the note and mortgage, Gravitt attached to his motion a Consent Order of the Board of Governors of the Federal Reserve System (Consent Order). The Board, among other matters, ordered a "Foreclosure Review" to determine whether at the time certain foreclosure actions were commenced by JPMorgan Chase & Co. (Chase Bank) and EMC Mortgage Corporation (EMC), a nonbank subsidiary of Chase Bank that was engaged in the servicing of residential mortgage loans, had proper documentation under controlling state law of their ownership of the relevant promissory note and mortgage. The review was ordered because of improprieties and unsound banking practices by Chase Bank and EMC in the process leading to foreclosure actions during the period January 1, 2009, to December 31, 2010, in which a quarter of a million foreclosure actions were initiated by Chase Bank and EMC and other direct and indirect nonbank mortgage servicing companies of Chase Bank. Chase Home is not specifically mentioned in the Consent Order.

Gravitt also attached as an exhibit a New York trial court foreclosure case (unpublished) in which the trial court revisited its prior decision granting a judgment of foreclosure to Chase Bank with respect to certain residential property. The trial court found Chase Bank was without standing when it commenced the foreclosure action because Chase Bank admitted in its complaint that the mortgage would be assigned to it at a later date. The court further found Chase Bank never refuted the homeowner's contention that Chase Bank lacked standing and presented no evidence that it was the holder of the mortgage and note on the date the foreclosure action was filed. Thus, the court found it never had jurisdiction to issue the judgment of foreclose.

he made in the motion to vacate.[8]

¶ 12 Among its arguments in response to Gravitt's petition, Chase Home argued that it presented evidence of its ownership of the note in its petition for foreclosure and in its motion for summary judgment because it attached a copy of the note to its pleading and its brief in support of summary judgment. Further, it argued the endorsements on the note were properly made and an endorsement in blank is valid under the Uniform Commercial Code, 12A O.S.2011 § 3–205.

¶ 13 The trial court entered its Order granting Gravitt's petition to vacate the judgment of foreclosure "for good cause show[n]." It is from this Order that Chase Home appeals.

## STANDARD OF REVIEW

¶ 14 Although in his appellate brief Gravitt argues the standard of review on appeal is the standard for summary judgment, Chase Home has appealed from the trial court's Order vacating the February 24, 2009 foreclosure judgment. Gravitt's "Summary of Case Exhibit A" attached to his Response to Chase Home's Petition in Error recognizes this appeal follows from the trial court's Order granting his petition to vacate. *See Patel v. OMH Medical Ctr., Inc.,* 1999 OK 33, ¶ 18, 987 P.2d 1185 ("Rule 13 applies to prejudgment issues only." A § 1031 vacation proceeding "is a legislatively created remedial mechanism in which a litigant seeks not a judgment, but rather relief from a judgment. There are no prejudgment issues in a vacation proceeding.... [A] vacation quest is a

post-judgment remedy.") (footnotes omitted) (emphasis omitted).[9]

¶ 15 "The standard of review of an order granting a motion to vacate, timely filed under 12 O.S. [2011] § 1031.1, is whether the trial court abused its discretion." *In re Estate of Hughes,* 2004 OK 20, ¶ 8, 90 P.3d 1000 (citing *Patel,* ¶ 20).[10] The test for measuring the legal correctness of a vacation order is "whether sound discretion was exercised upon sufficient cause shown...." *Schepp v. Hess,* 1989 OK 28, ¶ 11, 770 P.2d 34 (footnote omitted). "An abuse of discretion occurs when a court bases its decision on an erroneous conclusion of law, or where there is no rational basis in evidence for the ruling." *U.S. Bank Nat'l Ass'n v. Baber,* 2012 OK 55, ¶ 4, 280 P.3d 956 (citation omitted). Judicial discretion is abused when it "is exercised to an end or purpose not justified by, and clearly against, reason and evidence," *Patel,* ¶ 20 (footnote omitted), or when a trial court errs "with respect to a pure, simple and unmixed question of law," *Christian v. Gray,* 2003 OK 10, ¶ 43, 65 P.3d 591 (citation omitted). "A de novo standard applies when the error is one of law." *Id.* (citing *Scoufos v. State Farm Fire and Cas. Co.,* 2001 OK 113, ¶ 1, 41 P.3d 366) (although order was reviewed for abuse of discretion, *de novo* standard applies to issue of whether court applied correct legal standard).

## ANALYSIS

¶ 16 Chase Home argues the trial court's Order is an abuse of discretion because Gravitt's petition to vacate contains allegations, but presents no evidentiary support for the contention that Chase Home was not the

8. The trial court set the motion for hearing on October 17, 2011. According to the court's docket sheet, the hearing was held as scheduled, at the conclusion of which Gravitt was ordered to file a petition to vacate within ten days. Gravitt filed the petition more than three months later on January 25, 2012.

9. *See Liberty Bank and Trust Co. of Okla. City, N.A. v. Rogalin,* 1996 OK 10, ¶ 9, 912 P.2d 836 ("[T]he order adjudicating the amount due and ordering sale is a judgment on the foreclosure cause of action.") (citations omitted). *See also Bank of Panhandle v. Hill,* 1998 OK CIV APP 140, ¶ 11, 965 P.2d 413 (foreclosure judgment is

a final, appealable judgment) (citing *FDIC v. Tidwell,* 1991 OK 119, 820 P.2d 1338).

10. Although Chase Home filed a motion to reconsider the Order and the court docket reflects that motion was denied, the only order filed of record is the Order vacating the foreclosure judgment. However, the standard of review for a motion to reconsider—more properly, a motion for new trial under Oklahoma procedural law, *see, e.g., McMillian v. Holcomb,* 1995 OK 117, ¶ 7 n. 3, 907 P.2d 1034—is also abuse of discretion. *Taliaferro v. Shahsavari,* 2006 OK 96, ¶ 14, 154 P.3d 1240.

holder of the subject note or that some misrepresentation or fraud occurred involving Chase Home. Gravitt argues the Order to vacate was correct because there is "a question of fact whether [Arvest Bank's] loan officer committed fraud with regard to the Chase [Home] loan herein." He also argues "[t]he factual basis" for the trial court's Order was based on Gravitt's affidavit in which he contested the amount he owed under the subject note, asserted the "Arvest Bank [loan officer's]" forgery of "a promissory note and mortgage belonging to Gravitt," and challenged the endorsements on the subject note, and was based on the trial court's judicial notice of certain findings in the Consent Order.

¶ 17 As stated by Chase Home in its appellate brief, neither in his request for vacation of the foreclosure judgment nor in his arguments on appeal, does Gravitt specify the statutory basis for his request to vacate the foreclosure judgment.[11] Given his allegations in the petition and his arguments on appeal, however, it appears his claim is based on 12 O.S.2011 § 1031(4), for fraud allegedly practiced by Chase Home in procuring the foreclosure judgment, and on Chase Home's failure to demonstrate it was entitled to enforce the subject note which deprived the trial court of jurisdiction to enter the judgment, thus, the judgment was void and subject to attack at any time. However, as urged by Chase Home, neither the appellate record nor the law supports Gravitt's assertions.[12]

## I. Statutory Basis for Vacating Foreclosure Judgment

¶ 18 Regarding § 1031(4), none of the pleadings pertaining to the foreclosure action assert fraud against Chase Home. Gravitt has alleged various claims, including fraud, against Arvest Bank, as set forth in Gravitt's answer to Arvest Bank's cross-claim and his cross-claim against Arvest Bank. Gravitt attempts to tie Chase Home to Arvest Bank's alleged fraud asserting, "The [note] and mortgage were allegedly originated by Superior Bank.... Superior Bank is no longer [in] business. Superior Bank was purchased by Arvest Bank. Arvest Bank then allegedly sold the [note] and mortgage to Chase [Home]." Nothing in the record on appeal, however, supports the factual allegations Gravitt makes with respect to Arvest Bank and Chase Home.

¶ 19 As to Gravitt's claim that Arvest Bank purchased Superior Bank and then Arvest Bank "allegedly" sold the subject note and mortgage to Chase Home, our review of the pleadings filed in the foreclosure action reveal no such allegation. We also agree with Gravitt's claim that Arvest Bank does not appear on the note or any instrument upon which Chase Home relies. But, Arvest Mortgage Company does. The record contains no facts, nor even an allegation, that Arvest Mortgage Company and Arvest Bank are one and the same entity. While Arvest Bank may be a successor by merger to Supe-

**11.** The only statutory basis Gravitt stated in his petition to vacate was 12 O.S 2011 § 1031.1(C) (subsequently amended 12 O.S. Supp.2013 § 1031.1). That section provided:

> After thirty (30) days after a judgment, decree, or appealable order has been filed, proceedings to vacate or modify the judgment, decree, or appealable order shall be by petition in conformance with Section 1033 of this title.

Section 1033 provides:

> If more than thirty (30) days after a judgment, decree, or appealable order has been filed, proceedings to vacate or modify the judgment, decree, or appealable order, on the grounds mentioned in paragraphs 2, 4, 5, 6, 7, 8, and 9 of section 1031 of this title, shall be by petition, verified by affidavit, setting forth the judgment, decree, or appealable order, the grounds to vacate or modify it, and the defense to the action, if the party

applying was defendant. On this petition, a summons shall issue and be served as in the commencement of a civil action.

**12.** Chase Home also argues the trial court erred in vacating the 2009 foreclosure judgment because Gravitt's petition was filed more than one year after that judgment was entered. It argues the bankruptcy stay was not in effect at the time the petition was filed and, in any event, more than one year elapsed during which no stay was in place. Even assuming, without deciding, that the bankruptcy stay operated to allow Gravitt to file his petition to vacate the foreclosure judgment nearly three years after it was entered, for the reasons discussed herein, we conclude the trial court abused its discretion in vacating that judgment under the law and the facts presented in the appellate record.

rior Bank, as set forth in the caption of this case, that caption reference is not proof that Arvest Mortgage Company did not hold the note and mortgage through which Chase Home claims its right, as holder of the subject note, nor is it proof that Arvest Mortgage Company was otherwise unauthorized to endorse the subject note with' Superior Bank. Further, the second endorsement on the subject note is from Superior Bank/Arvest Mortgage Company by its attorney-in-fact Chase Manhattan Mortgage Corporation and is specially endorsed to Chase Manhattan Mortgage Corporation. The third endorsement is by Chase Manhattan Mortgage Corporation in blank. As Chase Home argues, Gravitt confessed judgment as to these facts.

¶ 20 However, it appears the crux of Gravitt's argument—both in his petition to vacate the February 2009 judgment and in his appellate argument—concerns the authority and authenticity of the endorsements on the subject note.[13] Pursuant to 12A`O.S.2011 § 3–308:

> (a) In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. *If the validity of a signature is denied in the pleadings,* the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized. . . .
>
> (b) *If the validity of signatures is admitted* or proved and there is compliance with subsection (a) of this section, a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to enforce the instrument under [§ 3–301] of this act. . . . [14]

(Emphasis added). Section 3–301 states a person entitled to enforce an instrument means, among others, the holder of the instrument. Chase Home alleged it was the holder of the subject note and attached a copy of the subject note to its petition for foreclosure.

¶ 21 Gravitt's answer to Chase Home's petition for foreclosure was a general denial and did not specifically deny the authority and authenticity of the signatures on the subject note. Moreover, Gravitt's confession of summary judgment concedes he had no facts to dispute the facts offered by Chase Home in its motion and accompanying brief. Gravitt's attempt to question the validity of the signatures on the subject note years after the foreclosure judgment was rendered comes too late and does not provide a factual basis for the Order.

¶ 22 Consequently, to the extent the trial court's Order vacating the foreclosure judgment is based on § 1031(4) because of some fraud committed by Chase Home, the trial court abused its discretion because there is no rational basis in evidence for the ruling.

## II. Chase Home's Right to Enforce the Subject Note

¶ 23 As to what appears to be the jurisdictional basis for the Order, the recent line of Oklahoma Supreme Court cases concerning the right to enforce a note in foreclosure actions makes clear it is the obligation

---

**13.** Gravitt references several allegations in his petition to vacate that challenge the endorsements on the note.

**14.** Section 3–203 provides:
(a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.
(b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.
An issuer "means a maker or a drawer of an instrument," § 3–105(c); a " '[m]aker' means a person who signs or is identified in a note as a person undertaking to pay," § 3–103(a)(5). A transferee is vested with any right of the transferor to enforce the note. *Deutsche Bank Nat'l Trust Co. v. Matthews,* 2012 OK 14, ¶ 8, 273 P.3d 43. *See also* Okla. Stat. Ann. tit. 12A, § 3–203, UCC cmt. 2 (West 2014), which states the rights of the transferee are derivative and "[p]roof of a transfer to the transferee by a holder is proof that the transferee has acquired the rights of a holder."

of the party asserting the right to enforce the note who must demonstrate that right as of the time of the filing of the petition to foreclose. *See, e.g., Deutsche Bank Nat'l Trust v. Brumbaugh,* 2012 OK 3, ¶ 11, 270 P.3d 151. The Supreme Court has stated appellate and trial courts have a duty to inquire into their own jurisdiction; standing is a jurisdictional issue. *Deutsche Bank Nat'l Trust Co. v. Byrams,* 2012 OK 4, ¶ 4, 275 P.3d 129. "It is fundamental that jurisdiction is the authority by which courts take cognizance of and decide cases," and the parties cannot confer jurisdiction upon the Court by agreement. *In re A.N.O.,* 2004 OK 33, ¶ 9, 91 P.3d 646. Consequently, that inquiry may be raised at any level of the judicial process and may be raised by this Court *sua sponte. Byrams,* ¶ 4.

¶ 24 As Chase Home argues, the appellate record demonstrates its right to enforce the subject note. At the time it filed its petition for foreclosure, Chase Home attached a copy of the note with endorsements, the last endorsement being in blank. The February 24, 2009 judgment specifically states a hearing was held on Chase Home's motion for summary judgment and that Chase Home "introduced its evidence, including the [subject note] and Mortgage herein sued upon . . . ." "As between the holder and maker of a negotiable instrument, possession thereof is prima facie evidence of ownership by the holder." *Cahill v. Kilgore,* 1960 OK 88, ¶ 15, 350 P.2d 928 (citation omitted). "Prima facie evidence is such evidence as in the judgment of law is sufficient to establish a fact, and if not rebutted, remains sufficient to establish that fact." *In re Estate of Hardaway,* 1994 OK 30, ¶ 15, 872 P.2d 395 (citation omitted).

¶ 25 Unlike the facts in many of the Oklahoma Supreme Court decisions concerning the right of a party to enforce a note in foreclosure proceedings, Chase Home attached a copy of the subject note with an endorsement in blank to its petition and, according to the foreclosure judgment, introduced the subject note and mortgage at the hearing. *Cf. Wells Fargo Bank, N.A. v. Heath,* 2012 OK 54, 280 P.3d 328 (note attached to petition contained no endorsement).[15]

¶ 26 Consequently, we conclude the trial court abused its discretion in vacating the 2009 foreclosure judgment to the extent the Order is based on the trial court's determination that it was without jurisdiction to enter the 2009 foreclosure judgment because Chase Home failed to prove it was the holder of the subject note.[16]

## CONCLUSION

¶ 27 The appellate record contains no facts from which it can be concluded that Chase Home claimed its rights as holder of the subject note through Arvest Bank or that otherwise tie Chase Home to Gravitt's alleged claim of fraud and other claims against Arvest Bank. The appellate record shows Chase Home attached a copy of the subject note to its foreclosure petition and the foreclosure judgment specifically states Chase Home introduced the subject note and mortgage at the summary judgment hearing. The record demonstrates that Chase Home

---

**15.** As to the Consent Order, as noted by Chase Home in its Brief-in-chief, that decree does not name Chase Home but only Chase Bank and one of its nonbank subsidiary servicers of residential mortgage loans. *See* n. 7, *supra.* It also was specifically concerned with "unsound banking practices" that occurred during a period after Chase Home filed the present foreclosure action. Even if Chase Home is one of the non-named "direct and indirect nonbank mortgage servicing companies of" Chase Bank mentioned in the Consent Order, the record before us demonstrates Chase Home did have the requisite proof of its possession of the subject note at the time it filed the foreclosure petition. Further, this record not only also distinguishes the present case from the unpublished New York case upon which

Gravitt relied, but also from *BAC Home Loans,* 2011 OK CIV APP 35, ¶ 11, 256 P.3d 1014 (note was specially endorsed to another and no evidence was introduced at the hearing on motion for summary judgment of a subsequent in blank endorsement of the note in BAC's possession, only the representation of BAC's attorney of such endorsement and possession).

**16.** In its appellate brief, Chase Home requested an award of costs and fees without a separately filed and labeled motion and without citation to the statutory or decisional authority allowing the attorney's fee as required by Oklahoma Supreme Court Rule 1.14, 12 O.S.2011 & Supp.2013, ch. 15, app. 1. We deny Chase Home's request.

was in possession of the subject note, endorsed in blank. Superior Bank and Arvest Mortgage Company, by special endorsement, endorsed the subject note to Chase Manhattan Mortgage Corporation which endorsed the note in blank. At the time of the foreclosure petition, Gravitt never denied the authenticity or authority of the signatures on the note, and, in fact, confessed summary judgment; consequently, pursuant to 12A O.S.2011 § 3–308, their validity was admitted. The trial court's Order vacating the 2009 foreclosure judgment was, thus, an abuse of discretion because there was no rational basis in the evidence for the ruling and the ruling was based on an erroneous conclusion of law. Accordingly, the Order is vacated and the cause is remanded for further proceedings.

¶ 28 **VACATED AND REMANDED FOR FURTHER PROCEEDINGS.**

RAPP, P.J., concurs, and
THORNBRUGH, J., specially concurs.

THORNBRUGH, J., concurring specially.

¶ 1 I concur specially to emphasize that the district courts should avoid being beguiled into accepting the notion that any and all questions regarding the final validity or enforceability of a note have become "standing" issues and, hence, "jurisdictional" issues. I join the majority here to state emphatically that attaching a copy of a *facially* enforceable note to a petition establishes a *prima facie* case for standing. All further questions regarding the final legal right of the Plaintiff to foreclose on the note and mortgage remain *merits questions.*