2006 OK 18

STATE of Oklahoma, ex rel. OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

Helen Frances BESLY, Respondent.

No. SCBD 4716.

Supreme Court of Oklahoma.

March 28, 2006.

593

Loraine Dillinder Farabow, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for complainant.

Helen Frances Besly, Tulsa, OK, respondent, appearing pro se.

### RULE 6 BAR DISCIPLINARY PROCEEDING

LAVENDER, J.

¶ 1 Complainant, the Oklahoma Bar Association (OBA) brought disciplinary proceedings against respondent, Helen Frances Besly, under Rule 6, Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2001, Ch. 1, App. 1–A, as amended, by a complaint dated April 26, 2002. The parties entered written joint stipulations, including agreement respondent engaged in misconduct primarily relating to her involvement in drafting wills for a now deceased married couple, Donald and Edith Baker and her handling of the estate cases that ensued after their deaths. After hearing held on May 25, 2004, a Professional Responsibility Tribunal trial panel (PRT) issued a written report containing proposed factual findings and concluding respondent violated the same RGDP and the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2001, Ch. 1, App. 3–A, as amended, as charged in the complaint. The PRT recommends a three month suspension. Upon de novo review we cannot find respondent guilty of some of the misconduct charged as the record does not show the charges by clear and convincing evidence and/or for legal reasons we will explain. However, we hold she is guilty of certain misconduct and that a six month suspension from the practice of law is warranted. We also hold respondent liable for the costs of these proceedings.[1]

### PART I. STANDARD OF REVIEW.

¶ 2 In *State ex rel. Oklahoma Bar Ass'n v. Taylor*, 2003 OK 56, 71 P.3d 18 the basic standard of review in attorney disciplinary cases was set forth. In *Taylor*, initially quoting from *State ex rel. Oklahoma Bar Ass'n v. Todd*, 1992 OK 81, 833 P.2d 260, 262 and then relying on other cases, we stated:

> In attorney disciplinary proceedings [our] determinations are made *de novo*. The ultimate responsibility for deciding whether misconduct has occurred and what discipline is warranted if misconduct is found rests with us in the exercise of our exclusive original jurisdiction in bar disciplinary matters. [N]either the findings of fact of a [PRT] nor its view of the evidence or credibility of witnesses are binding on us and [its] recommendations ... are merely advisory. ...

Even when the parties' (sic) stipulate to misconduct, the stipulations do not bind us for our duty is to review the evidence *de novo* to decide if misconduct allegations are established by clear and convincing evidence, i.e, a degree of proof producing in the mind of the trier of fact a firm belief or conviction of the truth of the allegations sought to be established. The review is a full-scale exploration of all relevant facts and requires a complete record be made before the PRT, one sufficient for an examination of all pertinent issues, a thorough inquiry into all essential facts, and the crafting of appropriate discipline.

*Taylor*, 2003 OK 56, at ¶ 2, 71 P.3d at 21 (citations omitted). This Court's cognizance of attorney disciplinary proceedings is shared with no other institution and our *de novo* consideration insures the proper and necessary supervision over the entirety of the Bar's adjudicative process. *See State ex rel. Oklahoma Bar Ass'n v. Funk*, 2005 OK 26, ¶ 3, 114 P.3d 427, 430. The record in the present matter is sufficient for our *de novo* consideration of all pertinent issues, all es-

---

1. We realize most, if not all, of the misconduct charged by complainant, the Oklahoma Bar Association (OBA) against respondent, Helen Frances Besly, occurred before 2001. We, however, cite to the current Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2001, Ch. 1, App. 1– A, as amended and Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2001, Ch. 1, App. 3–A, as amended, unless a change in a pertinent Rule of the RGDP or ORPC necessitates citing to an earlier version.

sential facts and the crafting of appropriate discipline.

## PART II. OVERVIEW, FACTS AND BACKGROUND.

¶ 3 At the hearing before the PRT respondent and an OBA investigator testified and numerous exhibits were admitted, including the parties' written joint stipulations. The OBA filed a brief in chief with this Court on August 23, 2004, therein asserting respondent's misconduct warrants, at a minimum, a public reprimand and, at most, a one year suspension. Thereafter, each party filed a waiver of further briefs.

¶ 4 The stipulations detail four counts (including agreed facts and legal conclusions as to each), cover agreed aggravation and mitigating circumstances, and other matters the parties deem pertinent. No need exists to set out the entirety of the stipulations. We will discuss them as required to perform our duty to decide if respondent violated pertinent Rules and, if so, the proper discipline. We now note, however, the stipulations contain, at least, one significant factual error and multiple problems associated with legal conclusions concerning specific rule violations, that have unnecessarily complicated our review of this case. These matters will be discussed as needed for proper disposition of this case.

¶ 5 The stipulations indicate respondent was born in 1920, graduated from law school at the University of Oklahoma and has been an OBA member since 1950. She also has an accounting background and experience. She is a solo practitioner with no support staff and has been disciplined once before. In June 1996 she received a private reprimand from the Professional Responsibility Commission (PRC) for neglect in two estate matters and failing to respond to the complaint/grievance lodged against her with the OBA as to one of the matters. The rule violations identified by the PRC in its June 1996 written private reprimand were Rules 1.3 [2] and 1.4(a) [3], ORPC and Rule 5.2 [4], RGDP.

¶ 6 The present case has its genesis on or before February 8, 1988, the date separate wills were signed by Donald and Edith Baker. Respondent drafted the wills. Boiled down, each will provided respondent was to receive a substantial testamentary gift of mineral, royalty and overriding royalty interests valued at over $500,000.00, the gift to be made to respondent under the will of the Baker spouse that died last. It was the Bakers' idea and desire that respondent be given the interests and they requested she prepare the wills as she drafted them.

¶ 7 Respondent was a close personal friend of the Bakers for many years and also had business relations with one or both since the year 1953, when she and Edith worked at Sinclair Oil & Gas Company. Donald was born in 1905 and Edith in 1906, according to their wills. Each will indicates the Bakers never had children, "natural nor adopted"

---

**2.** Rule 1.3, ORPC provides, "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

**3.** Rule 1.4(a), ORPC provides, "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

**4.** Rule 5.2, RGDP provides:

After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete, or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action.

and, respectively, each will states the parents of Donald and Edith were deceased. Donald's will sets out he had only one living sibling, a sister, one Mary Kell and that he had living nieces and nephews, in addition to a grandniece and a grandnephew. Edith's will indicates she had no living siblings, but had living nieces and grandnieces. The OBA does not allege and the record does not show respondent overreached or unduly influenced the Bakers in regard to their wills.

¶ 8 The Bakers' entire estate was estimated to be valued at approximately $1,800,000.00 to about $2,500,000.00, including shares in a company named Aker Oil Company, various oil and gas interests and other shares of stock. Each will had a no contest clause, in pertinent part basically operable if any beneficiary thereunder challenged the wills' provisions—a contesting beneficiary being left $1.00.

¶ 9 The parties stipulated, and based thereon the PRT found, respondent prepared the wills in **1989**. **The 1989 date is wrong** as conclusively and unequivocally shown by exhibits (including copies of the wills) admitted by agreement of the parties at the PRT hearing. The wills could not have been drafted in **1989** by respondent, as they are dated, shown as being signed, witnessed and notarized on February 8, 1988.

¶ 10 Although one might think the incorrect stipulation that the wills were prepared in 1989 was merely an insignificant typographical or scrivener's error that would not impact our review of this case, that is not the actuality. The significance stems from the fact the ORPC were **not** in effect in February 1988. Yet, the parties stipulated (concerning count I) that respondent violated Rule 1.8(c), ORPC, a Rule, in pertinent part, **expressly prohibiting** an attorney's drafting a will for a non-relative client that leaves the attorney a substantial testamentary gift. In February 1988 the Oklahoma Code of Professional Responsibility (hereafter Code), 5 O.S. 1981, Ch 1, App. 3, as amended, was in force, **not** the ORPC. The Code did **not** include a Disciplinary Rule (DR) containing such an **express prohibition.** The ORPC (5 O.S. Supp.1988, Ch. 1, App. 3–A) did not supercede the Code until July 1, 1988. We will

have more to say about the incorrect factual stipulation and the problems concerning certain legal conclusions contained in the stipulations in the **ANALYSIS** part of this opinion.

¶ 11 In any event, Edith and Donald were named as executrix or executor of the other's will, and were to so serve unless deceased or unable to do so for other reasons. Respondent was named successor executrix under each will. Both wills also named respondent as the attorney to probate the estates.

¶ 12 In November 1995 Donald died, predeceasing Edith. Under Donald's will, all his property was left to Edith if she survived him. At the time of Donald's death Edith was bedridden, and unable to speak or care for herself. Respondent, who had a power of attorney for Edith dated December 11, 1992, managed all her personal funds and provided needed care to Edith, either personally or through the hiring of others. The power of attorney **expressly** provided it **terminated** upon Edith's death.

¶ 13 Upon Donald's death respondent assumed the role of successor executrix for Donald's will. Edith died in September 1997 and respondent became successor executrix for Edith's will. Probate cases were filed in Tulsa County as to each Baker will. In January 1996 respondent was appointed personal representative to administer Donald's estate in Tulsa County Case No. P–95–967; in September 1997 she was appointed personal representative to administer Edith's estate in Tulsa County Case No. P–97–730. As seen, respondent's involvement in the Baker probate/estate matters put her in the position of wearing three hats simultaneously, to wit: beneficiary of a substantial gift (under Edith's will, as she died after Donald), attorney (both as drafter of the wills and in the probate cases) and personal representative. Of course, she also wore a fourth hat in relation to Edith's personal and business affairs at least from the time of Donald's death to the time of Edith's passing by virtue of the power of attorney, a role not directly under the probate/estate umbrella.

¶ 14 Even though respondent was to receive a substantial testamentary gift she did

not advise the Bakers to seek independent advice from other counsel concerning the wills nor did the Bakers do so. The parties' stipulations as to Count I involve the conflict of interest implicated by respondent drafting wills for the Bakers, her clients, while at the same time including herself as a substantial beneficiary in the wills. The stipulations conclude this conduct violated Rule 1.8(c), ORPC and the PRT in its July 26, 2004 report concludes the same. Respondent, in effect, acknowledges she should not have drafted wills including within their terms a substantial gift to herself and that, in the future, she would not do so again. Respondent has relinquished all rights to the property sought to be given to her by the Baker wills pursuant to a settlement reached with the Trust Company of Oklahoma (TCO), TCO having been appointed new administrator of the estates after respondent's removal.[5]

¶ 15 Count II of the stipulations concerns respondent's neglect of the estate cases. As of early August 1998 she had not filed an inventory, annual accounting, the pertinent decedents' personal federal and state tax returns for the years 1995, 1996 and 1997, and the pertinent estate federal and state tax returns for the years 1995, 1996 and 1997 as to either estate. As a result, certain Baker heirs hired counsel and a petition was filed in each probate case requesting an order to have respondent file inventories and an accounting.[6] The petition also questioned the apparent failure of respondent to file the appropriate tax returns in a timely manner.

¶ 16 In September 1998 the petitions were heard before a district judge assigned to the two cases. Orders were entered in each case, to the effect, respondent had neglected to file inventories and appraisements therein, neglected to file accountings as required, failed to file timely estate tax returns and failed to file the required fiduciary income tax returns for Donald's estate. An order issued in each case suspending the letters testamentary that had been issued to respondent. Each order required appropriate inventories and appraisements be filed no later than 11:00 a.m., September 25, 1998 and accountings no later than 11:00 a.m., October 1, 1998. The orders indicated the judge would review the matter on October 13, 1998, including whether the letters testamentary issued to respondent should be revoked. An extension of time for respondent to comply was granted by the judge until October 13th, at which time she was to appear before the judge. She did not appear as required nor did she file the inventories, appraisements and accountings as required. Her letters testamentary were revoked and she was removed as personal representative of the estates, although she was not discharged.

¶ 17 TCO was appointed the new administrator in each estate case in December 1998. The record shows respondent prepared inventories in regard to the estates prior to the end of 1998. In early 1999 she also appears to have prepared, at least, some of the appropriate state and federal tax returns.

¶ 18 Materials in the record indicate the Baker estates were fairly complex and Mr Baker did not leave his affairs in an orderly

---

5. As to each of the four counts, the stipulations agree, and the PRT concludes, respondent violated Rule 8.4(a), ORPC and Rule 1.3, RGDP. Rule 8.4(a), in pertinent part provides, "[i]t is professional misconduct for a lawyer to ... violate or attempt to violate the [ORPC]...." Rule 1.3, in relevant part provides, "[t]he commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action...." As we view the April 2002 OBA complaint concerning the charging of violation of these two Rules, the parties' stipulations respondent violated them and the PRT's finding of violation, no transgression in addition to the misconduct charged, stipulated or found

under the more specific Rules covered in the complaint, stipulations or July 2004 PRT written report was intended. No need exists to further discuss Rule 8.4(a) or Rule 1.3.

6. Generally, a personal representative is to file an inventory of estate assets within two months from the date of the representative's appointment. 58 O.S.2001, § 281(A). Annual accountings are generally required by 58 O.S.2001, § 234(C). Section 234 has not been amended since 1992. Although § 281 was amended in 1998 (1998 Okla.Sess.Laws, Ch. 225, § 1), the two month inventory requirement is the same now as when the events involved in this case transpired.

fashion such that respondent was required to review and organize a multitude of documents, apparently many of which, if not all, were kept in file drawers in a double car garage. Our *de novo* review of the instant record concerning the estates, e.g. tax forms and inventories, convinces us that, indeed, the estates were fairly complex, given the extent and variety of the assets involved.

¶ 19 In a June 1999 letter response to the OBA in regard to the grievance lodged against her by Kelly Baker, a nephew of Donald Baker, in a July 2001 answer to a petition for surcharge filed by TCO in Donald's estate case and in her June 2002 response to the OBA's April 2002 complaint, respondent provides at least some details of the extensive work time she was putting in providing care for Edith prior to her death, keeping up with Baker business affairs and attempting to complete estate duties. As to count II respondent agreed to violating Rules 1.1 [7], 1.3 and 3.2 [8], ORPC.

¶ 20 Count III of the stipulations basically concerns respondent's handling of estate assets. Counsel hired by several heirs of the Bakers, after reviewing the court files in the estate cases, wrote respondent a letter in late May 1998 requesting her to deliver certain items, including an inventory and appraisement as to both estates, various tax returns, Oklahoma tax releases and federal estate tax closing letters, if any, two annual accounts for Donald's estate, an interim accounting as to Edith's estate and copies of all creditor claims, if any. Despite receiving the letter on or about June 9, 1998, respondent refused to provide the requested materials.

¶ 21 In February 1999, TCO, in effect, filed a motion to compel respondent to appear as a witness before the trial judge to account for her actions in the two estates, along with a motion for production of property because respondent had failed to deliver to TCO estate property, including oil and gas leases, financial records, stock certificates, mineral and real estate deeds, bank statements, household furniture, automobile titles and certain tax returns. The motion(s) were set for hearing on March 11, 1999.

¶ 22 At the hearing, with respondent in attendance, the judge found she had failed and refused to deliver to TCO certain requested estate property and ordered her to deliver same to TCO on March 12th. The hearing was continued until March 15, 1999 for the purpose of determining whether respondent had complied.

¶ 23 Following her production of a portion of the materials requested, TCO believed respondent's neglect and misconduct had resulted in serious financial loss and cost to the Baker estates. In March 2001 TCO filed a petition for surcharge against respondent as the prior personal representative in each estate case. Despite being personally served with a copy of the petitions on March 15, 2001, respondent failed to timely file answers thereto. In April 2001 default judgments were obtained and/or filed in regard to the surcharge petitions. The record in this disciplinary case contains only the default judgment granted against respondent in Case No. P–95–967 (i.e., Donald's estate case) in the amount of $146,583.00, consisting of $76,500.00 in converted estate funds that respondent paid herself, apparently as attorney fees without prior court approval and the following expenses or charges incurred by TCO: $23,784.10 in attorney fees and expenses of administration; $23,752.00 for extraordinary administrator's commission; $16,162.50 for hiring the accounting firm of Deloitte & Touche to perform various accounting functions; $75.00 in moving expenses for boxes of documents; and $6,309.40 in interest on unpaid taxes. Respondent also failed to appear at the default judgment hearing held on or about April 23, 2001. In March 2001 TCO, as administrator of the estates, also filed a professional negligence (malpractice) case against respondent in the district court of Tulsa County.[9]

---

7. Rule 1.1, ORPC provides, "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

8. Rule 3.2, ORPC provides, "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

9. Matters concerning the surcharge petitions and the default judgments in the estate cases have been presented to us in this case, apparently, in

¶ 24 In an out of time answer to the surcharge petition(s) filed in July 2001 respondent, in effect, took the position she was being paid attorney fees for work she had actually been doing in the estate cases and, apparently, for time she was spending taking care of the personal and business affairs of Edith. She also asserted she was only paying herself out of the assets she was supposed to receive under the will(s), i.e., the mineral and/or royalty interests. Although respondent's various explanations of the payments being made to her are somewhat confusing and not entirely consistent, as we view the overall materials in this record, it appears she made the unilateral decision to pay herself for her work but was doing so with a mind-set that, in effect, she was making a partial distribution to herself of what she had been left via Edith's will, such partial distribution being made without prior approval of the court. By apparently paying herself out of the mineral and royalty interests she also appears to have intended to save any administrative estate charges against other beneficiaries that were to receive testamentary gifts under Edith's will. She also states in her June 1999 letter response to the OBA that she was not going to charge anything for being executrix.

¶ 25 Thus, although we do not view the record to clearly and convincingly show she

had any intent to defraud or steal from other beneficiaries (in fact, the OBA does not so allege), respondent, in none of her three roles (executrix, attorney or beneficiary) had authority to make a partial distribution to herself without prior approval of the court handling the probate cases. Further, of course, she was **not** entitled to any partial distribution under Donald's will as respondent received nothing thereunder as he predeceased Edith and all his property was left to Edith. And also, of course, she was entitled to **no** partial distribution under Edith's will for during most of the time she was making payments to herself, i.e., in 1995 after Donald's death, in 1996 and 1997 up to the date of Edith's death, she was entitled to **nothing** as a beneficiary under Edith's will, as Edith was still alive.

¶ 26 At least insofar as the payments made prior to Edith's death, respondent also believed it was not necessary to obtain court approval prior to making payments to herself because she had the power of attorney for Edith. Assuming without deciding this belief was correct as to, at least, some of the payments made after Donald's death, the belief or position, of course, could **not** apply to **any** payments after Edith's death, as the power of attorney **expressly** provided it **terminated** at Edith's death.[10]

less than a full or complete factually accurate manner. An Exhibit List in the record—shown as being submitted by the OBA to the Professional Responsibility Tribunal trial panel (PRT) for its aid in reviewing the matter—lists as Exhibit 47 a "Default Judgment on Administrator's Petition for Surcharge filed 4/23/01 in the *Estate of Edith Baker*, Tulsa County District Court Case No. P 97–730." Actually, the instant record does **not** contain a default judgment in regard to the petition for surcharge (Exhibit 46) that was filed in Edith's estate case. Exhibit 47 is a default judgment regarding TCO's petition for surcharge **filed in** Donald's estate case, Case No. P–95–967. Another mislabeled exhibit is Exhibit 49, the Exhibit List indicating it is an Answer by respondent filed on 7/5/01 in **both** the estate cases. When one views Exhibit 49 it becomes apparent that document is shown as having been filed **only in** Donald's estate case, Case No. P–95–967. An October 2, 2002 settlement agreement between respondent and the Trust Company of Oklahoma (TCO), as the new administrator of the two estates, plainly states that a petition for surcharge was filed in each of the two estate cases and that "on April 23, 2001, TCO obtained Default Judg-

ments ('the Default Judgments') on the Surcharge Petitions against [respondent]." The record, thus, seems to show petitions for surcharge were filed in each of the estate cases and that default judgments were taken in both cases. A copy of a July 5, 2001 deposition of respondent taken on behalf of TCO is Exhibit 48 in this disciplinary case and the caption on the deposition references **both** estate cases, i.e., Case No. P–97–730 and Case No. P–95–967. On pg. 3 of the deposition (lines 3–5) the attorney for TCO characterizes the deposition as an asset hearing of respondent in the two estate cases. Certain questions and answer(s) thereto contained in the deposition (although not conclusive) are supportive of the view that judgments were taken against respondent in each estate case totaling together over $300,000.00, rather than the amount shown by the **only** default judgment we have been provided herein, the one granted against respondent in Case No. P–95–967 (i.e., Donald's estate case) in the total amount of $146,583.00.

10. Although we need not definitively determine the issue in this case, respondent's belief or position may have had some viability for payments

¶ 27 An audit by the accounting firm Deloitte & Touche concluded that: 1) in 1995 respondent was loaned $15,000.00 by the Bakers prior to Donald's death and that after Donald's death she paid herself $1,500.00 without court approval; 2) in 1996 she paid herself $61,000.00 from the funds of Edith and Donald Baker without court approval; 3) in 1997 she paid herself $75,500.00 from the estate fund (including a payment made after Edith's death of $14,500.00); and in 1998, prior to her removal as personal representative/administrator of the Baker estates she paid herself $13,000.00. Excluding the 1995 $15,000.00 loan, these amounts total $151,000.00.

¶ 28 On or about October 2, 2002 a settlement agreement was reached by respondent and TCO concerning matters involved in the surcharge petitions and the malpractice case. The settlement was amended on or about October 18, 2002. In essence, via the settlement respondent agreed to relinquish/assign to TCO (as Edith's estate administrator) any

and all rights she might have had to the Bakers' mineral interests, royalty interests and overriding royalty interests given to her under the will(s). At the time of settlement the interests were valued at about $536,281.24, plus any future income. Additionally, pursuant to the agreement respondent conveyed to TCO title to a house she owned in Tulsa having a market value of $90,227.00, which sold at public auction for $70,000.00. We must also note that because we are convinced from review of the instant record the Bakers wanted to leave respondent the substantial mineral interests, the financial harm in light of the settlement respondent reached with TCO, was ultimately financial harm to herself. In other words, we do not view the record here to show other beneficiaries suffered, in the final analysis, financial harm by virtue of respondent's misconduct.

¶ 29 The parties' stipulations agree respondent's conduct as to count III violated Rules 1.1, 1.5 [11], 1.8 [12], 1.15 [13] and 8.4(b) & (c) [14],

made prior to Edith's death if, for example, the payments were coming from mineral interest royalties that were owned by Edith at the time of Donald's death and that were not assets of Donald's estate. Our review of the record presented in this matter convinces us some amount of the mineral interests were owned by Edith at the time of Donald's death and were not assets of Donald's estate.

11. Rule 1.5(a), ORPC provides in pertinent part, "[a] lawyer's fee shall be reasonable."

12. Rule 1.8, ORPC provides:
(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;
(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
(3) the client consents in writing thereto.
(b) A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation, except as permitted or required by Rule 1.6 or Rule 3.3.
(c) A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any

substantial gift from a client, including a testamentary gift, except where the client is related to the donee.
(d) Prior to the conclusion of representation of a client, a lawyer shall not make or negotiate an agreement giving the lawyer literary or media rights to a portrayal or account based in substantial part on information relating to the representation.
(e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter.
(f) A lawyer shall not accept compensation for representing a client from one other than the client unless:
(1) the client consents after consultation;
(2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
(3) information relating to representation of a client is protected as required by Rule 1.6.
(g) A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client consents after consultation, including disclosure of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.
(h) A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a

ORPC, and Rule 1.4[15], RGDP. The PRT report concludes respondent violated identical provisions.

¶ 30 In January 1999 the grievance giving rise to this case was lodged by Kelly Baker, Donald's nephew. Count IV concerns respondent's failure to properly and timely respond in the OBA grievance process and her false testimony during a deposition taken by the OBA in June 1999.

¶ 31 On or about February 11, 1999, the OBA mailed to respondent notice of the grievance and advising that a formal investigation was being opened. Rule 5.2, RGDP provides in pertinent part that "failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the [OBA] General Counsel, shall be grounds for discipline." Respon-

---

client for the lawyer's personal malpractice, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

(i) A lawyer related to another lawyer as parent, child, sibling or spouse shall not represent a client in a representation directly adverse to a person who the lawyer knows is represented by the other lawyer except upon consent by the client after consultation regarding the relationship.

(j) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:

(1) acquire a lien granted by law or contract to secure the lawyer's fee or expenses; and

(2) contract with a client for a reasonable contingent fee in a civil case.

13. Rule 1.15, ORPC provides in pertinent part:

a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

14. Rules 8.4(b) and (c) provide:

It is professional misconduct for a lawyer to:
. . .

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]

15. Rule 1.4, RGDP provides:

(a) All members of the Bar who are required under the Oklahoma Rules of Professional Conduct, Rule 1.15, to maintain a trust account for the deposit of clients' funds entrusted to said attorney, shall do so and furnish evidence thereof as hereinafter provided. The Executive Director of the Oklahoma Bar Association shall annually mail a card to each lawyer requesting the name of the bank or banks in which the lawyer carries any trust account, the name under which the account is carried and the account number. Provision will be made on the card for a response by lawyers who do not maintain a trust account and the reason for not maintaining said account. Lawyers shall have thirty days from the receipt of said inquiry to respond. Information received by the Association as a result of such inquiry shall remain confidential unless a grievance is filed against a lawyer which, in the opinion of the Professional Responsibility Commission, may warrant disciplinary action in regard to the handling of said trust account. Failure of any lawyer to respond giving the information requested will be grounds for appropriate discipline.

(b) Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or set-off for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion. This does not apply to the retention of money or other property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services.

(c) Theft by conversion or otherwise of the funds of a client shall, if proved, result in disbarment.

(d) Controversies as to the amount of fees shall not be considered a basis for charges in a disciplinary proceeding unless it is made to appear that the amount demanded is extortionate or fraudulent.

dent did not respond as required. On or about March 12, 1999 the OBA, via certified mail, sent her a letter advising that failure to respond within five days would result in the issuance of a subpoena requiring her sworn testimony and production of relevant documents. She received the letter on or about March 29, 1999, but failed to respond in writing as required.

¶ 32 On or about May 19, 1999, respondent was personally served with a subpoena *duces tecum* issued by the PRC at the request of the OBA commanding her appearance and testimony at the Oklahoma Bar Center on June 9, 1999. She appeared on June 9th, her deposition was taken on that date, but she failed to produce her complete file in the Baker estates or all of the documents requested in the subpoena *duces tecum*. At the deposition she finally submitted a written response to the grievance lodged by Kelly Baker. When asked, at the deposition, if she had paid herself "any fees out of the estate" for work she had performed, respondent replied, "[n]o. Now, I paid from her—from her account, when she was alive, for some of the work I did. But not anything for the estate. [Edith] had money and [Donald] had money." The testimony was, at least, partly false as she did make payments to herself after Edith's death in 1997 and 1998 totaling $27,500.00. Later in the disciplinary process respondent acknowledged making payments to herself after Edith's death. It was not until after her June 1999 deposition that respondent became cooperative with the OBA regarding this matter. As to count IV respondent stipulated her conduct violated Rules 8.1(b) [16] and 8.4(c), ORPC, and Rule 5.2, RGDP and the PRT found violations of these Rules.

¶ 33 The parties also stipulated to certain mitigation. The parties inform us that respondent has been a member of various legal organizations and is a past President of the Oklahoma Association of Women Lawyers (1960). Following her deposition in June 1999, as we have already noted, respondent has been cooperative with the OBA in regard to this matter. Respondent also acknowledges that her conduct has caused harm to the reputation of the OBA. The parties also tell us that respondent regularly performs pro bono work for elderly clients and assists them with their medical care. She is also involved in one or more organizations that perform charitable work and various public services and she is an active member of her church.

## PART III. ANALYSIS.

### COUNT I.

¶ 34 As to Count I, we cannot find a violation of Rule 1.8(c), ORPC, a Rule that, in pertinent part, contains an **express prohibition** against an attorney drafting a will for a non-relative client that leaves the attorney a substantial testamentary gift via the will. Respondent could **not** have violated Rule 1.8(c) in or prior to February 1988 in regard to drafting the Baker wills as that Rule did **not** then exist in Oklahoma.

¶ 35 It seems the parties' **wrong** stipulation the wills were prepared by respondent in **1989** gave rise to the **erroneous** stipulated legal conclusion she violated Rule 1.8(c). The stipulation is wrong because the wills had to have been drafted/prepared **on or before February 8, 1988,** the date shown on the wills for when each was signed, witnessed and notarized.[17] Rule 1.8(c) did not

---

16. Rule 8.1(b), ORPC provides:

> An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
>
> \* \* \*
>
> (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclo-

sure of information otherwise protected by Rule 1.6.

17. The February 8, 1988 date is on each will three separate times and the record would **not** support a finding the date is on the wills through scrivener's error. The Exhibit List in the record lists as Exhibit 3, Donald's will "dated 2/8/88" and as Exhibit 9, Edith's will "dated 2/8/88" and other exhibits in the record from the Tulsa County probate cases recognize the February 1988 date. Also, the stipulation respondent prepared the wills in **1989** is inconsistent with a sentence on pp. 7–8 of the OBA brief filed with this Court

come into being in Oklahoma until July 1, 1988, the effective date the ORPC replaced the Code. In other words, Rule 1.8(c) **was** in force in 1989, but **not** in February 1988. Thus, we must exonerate respondent of a Rule 1.8(c) violation.[18]

## COUNT II.

¶ 36 As to count II, the record clearly and convincingly shows misconduct relating to her handling of the Baker estate cases in violation of Rules 1.1, 1.3 and 3.2, ORPC. Rule 1.1 requires competent representation, including thoroughness and preparation reasonably necessary for the representation. Rule 1.3 requires reasonable diligence and promptness in representing a client. Finally, Rule 3.2 requires reasonable efforts to expedite litigation consistent with the interests of the client. The record shows, in one way or another, respondent fell short of these requirements in her handling of the cases.

> in August 2004: "[t]he misconduct in this disciplinary case occurred **from 1988, beginning with the drafting of the wills of Donald and Edith Baker,** through October of 2002 when Respondent finally settled the lawsuit brought against her by the Bakers' heirs." (emphasis added). The April 2002 OBA complaint against respondent wrongly alleges the 1989 year for when respondent prepared the wills and the incorrect legal conclusion Rule 1.8(c), ORPC was violated. Also, for some unknown reason, respondent's June 2002 response, etc. (pg. 2) to the complaint admits the 1989 date for when she prepared the wills. Though we are not sure, possibly the parties' mistake was fostered by the fact the notary public that performed her functions in the will process and whose signature appears on both wills, sets out on each her commission was to expire on May 28, 1989. In other words, the error may have been fostered by the parties' carelessness in their review and presentation during the disciplinary process.
>
> We also note a codicil to Edith's will was apparently prepared after her will concerning disposition of personal property. The codicil is not in the record. We cannot discern via the record exactly when the codicil was drafted and the record does not show respondent drafted it. Rather, it appears to have been hand-written by Edith. Nothing presented to us supports the view the parties rely on the codicil to anchor a Rule 1.8(c) violation against respondent.

**18.** In February 1988 Disciplinary Rule (DR) 5–101(A) of the Oklahoma Code of Professional Responsibility (hereafter Code), 5 O.S.1981, Ch. 1, App. 3, provided:

¶ 37 That the estates were fairly complex, required review and organization of a multitude of documents and during some of the time-frame involved respondent was caring for Edith (or seeing to it that others did so), does not shield her from professional discipline. Taking on more work than can be handled adequately does not relieve an attorney from the professional requirements mandated by Rules 1.1, 1.3 and 3.2. *See State ex rel. Oklahoma Bar Ass'n v. Giessmann,* 1997 OK 146, ¶ 9, 948 P.2d 1227, 1229 (essentially recognizing that taking on more work than can be adequately handled does **not** relieve an attorney of the reasonable diligence requirement of Rule 1.3).

## COUNT III.

¶ 38 As to count III, the OBA did not show by clear and convincing evidence. four of the charges alleged in the complaint, stipulated

> Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.
>
> Drafting a will in which the attorney-drafter is named a substantial beneficiary is employment embraced within DR 5–101(A)'s language. *In re Vogel,* 92 Ill.2d 55, 65 Ill.Dec. 30, 440 N.E.2d 885, 888–889 (1982). Rule 6.2, RGDP requires that a complaint set forth the specific facts, but "does not require the lawyer to be notified of the specific disciplinary rule that such conduct violates." *State ex rel. Oklahoma Bar Ass'n v. Moss,* 1990 OK 22, 794 P.2d 403, 407. Also, in *State ex rel. Oklahoma Bar Ass'n v. Bolusky,* 2001 OK 26 n. 2, 23 P.3d 268, this Court made it clear that stipulations of the parties do not limit this Court's analysis to ethical standards relied on by the parties. Of course, however, "[a] lawyer in a disciplinary proceeding receives the protection of the Due Process Clause, and must be given notice of the allegations of misconduct...." *Id.,* 2001 OK 26, at ¶ 8, 23 P.3d at 273. Although it is a close question, our review of the complaint, specifically, and the record, generally, convinces us it is not appropriate to determine whether respondent violated DR 5–101(A) in regard to her involvement in drafting the Baker wills as she was not given adequate notice of the full facts/allegations that would underpin a claim of misconduct under that DR. Also, even if we did rule it was appropriate to reach the issue and misconduct under DR 5–101(A) was found, given the overall circumstances in this case, the discipline meted out would be the same we impose today.

to by the parties and found by the PRT to be misconduct violations. These are: 1) Rule 1.5, ORPC, prohibiting an attorney from charging an unreasonable attorney fee; 2) Rule 8.4(b), ORPC, providing "[i]t is professional misconduct for a lawyer to ... commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;" 3) Rule 8.4(c), ORPC, that provides, "[i]t is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation;" and 4) Rule 1.8, ORPC, a provision having ten subsections, none of which are specified in relation to count III in the complaint, the stipulations or the PRT report.[19]

¶ 39 We first deal with the alleged Rule 1.5 violation. Although the money paid to respondent, i.e., $151,000.00, over an approximate two and one-half year period (December 1995 to May 1998) appears high, on the instant record we cannot determine exactly how much work respondent was engaged in under the power of attorney (handling the business and personal affairs of Edith after Donald's death, but before Edith's passing) and how much was related to the estates.[20] We cannot because the record does not adequately delineate or differentiate between work done under the power of attorney and work related to the estates. Thus, it would be improper for us to find all the payments made to respondent were for work in the estates, when the record does not actually show that to be the case. It is also clear to us from reviewing the record that respondent was performing substantial work in both roles. The bottom line as to the unreasonable fee charge is that we cannot find respondent guilty of a violation because the record does not clearly and convincingly show an unreasonable fee.[21]

¶ 40 As to Rule 8.4(b), in no discernable way does the record identify criminal

---

19. We recognize the complaint, the stipulations and the PRT report conclude respondent violated Rule 1.1, ORPC (requiring competent representation) in relation to conduct covered in count III. We have already decided under **COUNT II** that respondent violated Rule 1.1 in regard to her handling of the Baker estate cases. Count III, though essentially covering different factual matters, also relates to respondent's conduct in the Baker estate cases. We decline to find respondent guilty of any **separate** violation of Rule 1.1 in relation to count III.

20. Of course, the $27,500.00 paid to respondent after Edith's death had to be for estate work.

21. In that the record is insufficient to adequately show all payments made to respondent were for legal services related to the estates, we have no occasion to decide here whether an unreasonable fee determination violative of Rule 1.5, ORPC, would be warranted based on arguments grounded, at least in part, on the case of *Estate of Brown*, 1982 OK 126, 653 P.2d 928. *Estate of Brown* dealt with the issue of whether an attorney, also the executor or administrator of an estate, was entitled to extra compensation for legal services rendered to the estate. Initially, the Court set out the general rule as follows:

Generally, in the absence of an enabling statute, an executor or administrator is not entitled to extra compensation for legal services rendered by him, or his firm, to the estate. The reason for the rule is that a person vested with fiduciary duties should not turn a profit by employing himself, because self-employment inhibits the performance of one part of the trust—assuring that no improper charges are made. This prohibition is founded on the public policy that one who has an obligation to perform should not place himself in a position which conflicts with his personal interests.

*Estate of Brown*, 653 P.2d at 930. (footnotes omitted). The Court recognized an exception to the general rule, deciding a legal fee in addition to an executor's commission may be awarded within carefully circumscribed bounds under 58 O.S. § 527 (for current version see 2001 Oklahoma Statutes). *Estate of Brown*, 653 P.2d at 931. Basically, § 527 sets an executor's commission when not otherwise set by the will and also authorizes further commission as the district court may deem just and reasonable, for extraordinary service. In a court proceeding to recover such a fee, the burden is on the attorney to show by clear and convincing evidence that work performed in his/her legal capacity was performed in good faith and was necessary, reasonable and beneficial to the estate. *Estate of Brown*, 653 P.2d at 931. A specific written itemization (attested to under oath) of all services must be submitted to include an indication of time spent performing each service and an explanation concerning why each service was necessary. *Id.* The fee may not equal more than the statutory commission granted the executor under § 527, i.e., an attorney may not be awarded more than the executor's commission plus an equal amount for extraordinary legal services. *Estate of Brown*, 653 P.2d at 931. Finally, the attorney must perform all legal services in compliance with applicable professional rules. *See id.*

conduct associated with count III. No criminal statute is specified in the complaint, stipulations or the PRT report relating to count III. The OBA's August 2004 brief does not cite Rule 8.4(b), except on pg. 2, numbered ¶ 1, where that Rule (along with others) is listed as having been set out in the April 2002 OBA complaint as a Rule allegedly violated by respondent. In other words, **no** explanatory discussion is in the brief concerning a Rule 8.4(b) violation.

¶ 41 In *State ex rel. Oklahoma Bar Ass'n v. Dobbs,* 2004 OK 46, 94 P.3d 31, this Court ruled that when the OBA charges a violation of Rule 8.4(b), but does **not** specify the criminal statute violated and the criminal offense is **not** readily apparent, the failure to direct us to the criminal statute may result in a respondent's exoneration as to said charge of misconduct. *Dobbs,* 2004 OK 46, at n. 34, 94 P.3d 31. Here, as to count III and a Rule 8.4(b) charge, the OBA has not specified the criminal statute and the criminal offense is not readily apparent to us. We exonerate respondent of a Rule 8.4(b) violation purportedly charged in count III.

¶ 42 The proof is also deficient with respect to dishonest, fraudulent, deceitful or misrepresentation-type conduct associated with count III. In fact, at pg. 43, lines 7–9 of the May 2004 PRT hearing transcript the OBA Assistant General Counsel handling this matter on behalf of the OBA states, "[o]bviously there's been no deceit in [respondent's] case and the Bar is not arguing that that is even applicable with regard to that aspect." The same Assistant General Counsel is shown as authoring the August 2004 OBA brief submitted for our consideration and contrary to the just quoted PRT hearing statement, at pg. 6 of the brief the following is set forth concerning a purported Rule 8.4(c) violation: "[respondent] failed to comply or abide by representations made to the court regarding the delivery of documents and court imposed deadlines in violation of Rules (sic) 8.4(c), ORPC." Although such behavior may constitute professional misconduct of some form (e.g., neglect), it does not rise to a Rule 8.4(c) violation, unless the record clearly and convincingly shows respondent had an intent or purpose to deceive

when she made the representations. The record does not contain clear and convincing proof of such a purpose or intent.

¶ 43 In *State ex rel. Oklahoma Bar Ass'n v. Taylor,* 2003 OK 56, ¶ 17, 71 P.3d 18, 27, quoting from *State ex rel. Oklahoma Bar Ass'n v. Johnston,* 1993 OK 91, 863 P.2d 1136, 1143, it is stated, "for conduct to constitute a violation of Rule 8.4(c) '[a] misrepresentation must be shown by clear and convincing evidence that the declarant had an underlying motive (i.e., bad or evil intent) for making the statement.'" In the "Terminology" section of the ORPC (immediately preceding the substantive Rules), the terms fraud or fraudulent are defined as "denot[ing] conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information." Thus, Rule 8.4(c) has an intent requirement and to prove a violation the OBA must adequately show the attorney had a purpose to deceive. *State ex rel. Oklahoma Bar Ass'n v. Todd,* 1992 OK 81, 833 P.2d 260, n. 3 and 263. The OBA failed to adequately show a purpose to deceive in regard to any conduct relating to count III and we cannot find respondent guilty of a Rule 8.4(c) violation purportedly charged in that count or relating to representations made by her to the trial court (in one or both of the estate cases) regarding the delivery of documents and court imposed deadlines.

¶ 44 As to a Rule 1.8 violation associated with count III, as noted, none of the subsections of the Rule are specified in the complaint, the stipulations or the PRT report. No specification was provided at the May 2004 PRT hearing or in the OBA's August 2004 brief. In fact, the brief indicates in numbered ¶ 1, pg. 2, that the complaint against respondent charged only a Rule 1.8(c) violation. In other words, Rule 1.8 is **not** mentioned in the brief, **other than** in the context of a Rule 1.8(c) violation already dealt with by us above in **COUNT I.**

¶ 45 The entirety of Rule 1.8 (subsections a through j) is set out in note 12, *supra.* In relation to count III, the only subsection we can discern may have been sought to be charged in count III is a Rule 1.8(a) violation concerning respondent accepting $15,000.00

in loaned funds from the Bakers in 1995 prior to Donald's death.[22] Rule 1.8(a) provides:

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto.

¶ 46 A loan from a client is a business transaction within the contemplation of Rule 1.8(a). *See State ex rel. Oklahoma Bar Ass'n v. Cross,* 1996 OK 131, 932 P.2d 1107. If the provisions of Rule 1.8(a)(1)-(3) were not complied with in regard to the $15,000.00 in loaned funds, a finding of a violation of the subsection would be warranted. However, there is no clear and convincing evidence of noncompliance in the record. The mere factual stipulation a loan was made from client to attorney, coupled with a bare stipulation to a legal conclusion that Rule 1.8 generally was violated, does not suffice as clear and convincing proof of a Rule 1.8(a) violation.

¶ 47 Although failing in its burden to show the above-discussed charges, the OBA did carry its burden to show certain misconduct relating to count III. Respondent's failure to promptly account for and deliver estate property to TCO is violative of Rule 1.4(b), RGDP and Rule 1.15(b), ORPC. Rule 1.4(b) provides:

(b) Where money or other property has been entrusted to any attorney for a spe-

cific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or set-off for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion. This does not apply to the retention of money or other property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services.

Rule 1.15(b) similarly provides:

b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

Once TCO was appointed as the new administrator respondent was required to account for and deliver to TCO all estate property. She failed to do so promptly, this violated both of the above provisions and her failure to promptly do so is, in effect, deemed a conversion.

¶ 48 Also, by paying herself under the auspices of what she considered her due as a beneficiary when the estate of Edith would be closed, she was commingling estate funds with her own and at a minimum as to at least some of the payments she in effect violated Rule 1.15(a), ORPC that provides in pertinent part, "[a] lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property." Neither an executrix nor an attorney doing legal work for the executrix in

---

**22.** The complaint in count III (pg. 9) actually makes the allegation "that in 1995, Respondent 'was loaned' $15,000.00 by her bedridden client, 'Edith Baker'...." The stipulations (pg. 10) drop this allegation and recognize that the $15,000.00 was loaned to respondent "by the Bakers prior to Donald's death...." Exhibit 57—titled "BAKERS STATEMENT OF EXPENSES 1995"—

shows two payments as loans to respondent, one in the amount of $10,000.00 in June 1995 and one in the amount of $5,000.00 in September 1995 (both prior to Donald's death). Exhibit 61—titled "Baker's Summary of Income and Expense 1995"—also shows the June and September 1995 loans.

an estate has the authority to make distributions to a beneficiary without court approval. In *In re Cook's Trust,* 1943 OK 96, 135 P.2d 492, 494, the Court stated, "[u]ntil the county court makes an order for partial or final distribution of the estate of a decedent, 58 O.S.1941, §§ 624, 631, the executor or administrator is without authority to deliver any of the estate to a trustee...." Sections 624 and 631 are statutes giving the court handling the probate case authority to order partial or final distribution of the estate. See now 58 O.S.2001, §§ 624 and 631.[23]

¶ 49 In sum, as to count III we do not find respondent guilty of violating Rules 1.5, 8.4(b) or (c) and 1.8, ORPC. We do determine she violated Rule 1.15(a) and (b), ORPC and Rule 1.4(b), RGDP.

**COUNT IV.**

■■■ ¶ 50 As to the three violations involved with count IV, we conclude the instant record adequately shows the charged violations. Respondent violated Rule 5.2, RGDP by failing to timely respond to the grievance lodged against her. She also violated Rule 8.1(b), ORPC by failing to produce, as required by the subpoena *duces tecum* associated with her June 1999 deposition during the investigatory stage of the disciplinary process, all the documents requested by the subpoena. Rule 8.1(b), with exception not applicable here, provides in pertinent part, "a lawyer ... in connection with a disciplinary matter, shall not ... knowingly fail to respond to a lawful demand for information from [a] ... disciplinary authority...." Failing to comply with a subpoena issued by the PRC at the OBA's request, without specific objection to production based on legal or factual bases that might appropriately excuse production, has been determined to constitute a violation of Rule 8.1(b). *See State ex rel. Oklahoma Bar Ass'n v. Miskovsky,* 1991 OK 88, 824 P.2d 1090, 1100–1101.[24]

■■■ ¶ 51 Respondent also violated Rule 8.4(c), ORPC by falsely testifying at her deposition that, in effect, she did not make any payments to herself from estate money and only made payments to herself while Edith was still alive. The testimony was false as respondent paid herself $27,500.00 after Edith's death, this money obviously being estate money.[25] The parties stipulated to a Rule 8.4(c) violation and the PRT report so found.

■■■ ¶ 52 Even if the proof in the record concerning the false deposition testimony

---

**23.** Respondent should also have been aware that an administrator of an estate is without legal authority to bind the estate for a fixed sum of probate legal fees. *Estate of Bartlett,* 1984 OK 9, 680 P.2d 369, 379. This Court has also recognized the hazard involved with an attorney being paid an attorney fee in an estate case without court approval. *State ex rel. Oklahoma Bar Ass'n v. Keeran,* 1972 OK 50, 495 P.2d 399, 400. The hazard arises mainly because more fees may have been paid than are finally authorized in the probate court final accounting order. *See id.* Although we have been unable to find a statute that requires court approval prior to payment of an attorney fee in every instance, in the final analysis court approval is necessary because the probate court must approve the reasonableness of any attorney fee prior to closure of the estate. The question of the reasonableness of the fee is left for the trial court's sound discretion. *Estate of Bartlett,* 680 P.2d at 380; *Estate of Hughes,* 2004 OK 20, ¶ 21, 90 P.3d 1000, 1006. "A probate court clearly has authority to examine a written contract for employment between an attorney and the personal representative before approving the attorney fee as an expense of administration in the final accounting." *Estate of Hughes,* 2004 OK 20, at ¶ 15, 90 P.3d at 1005, citing *Estate of Bartlett,* 680 P.2d at 379.

**24.** We recognize that at the June 1999 deposition (pp. 12–13) respondent indicated, essentially, she could not carry her complete files in regard to the Baker matters to the deposition, that she brought to the deposition what she thought was wanted, that she had given some materials to the new administrator and that she agreed to allow an OBA investigator to come to Tulsa to review and inspect the remainder of her files. In her June 2002 response to the April 2002 OBA complaint in regard to the subpoena production issue at pg. 31, numbered ¶ 43, she seems, at least in part, to inconsistently assert "[she] had turned over her files to the new administrator." Respondent stipulated to a Rule 8.1(b), ORPC violation as to count IV and she has not requested any ruling by us as to whether any of the above matters would be supportive of a valid specific objection, either of a legal or factual nature, to excuse production.

**25.** The Rule 8.4(c), ORPC violation concerning the false deposition testimony is not mentioned in the August 2004 OBA brief. The failure to mention it is something we cannot explain.

was for some reason determined to be deficient as to showing an intent or purpose to deceive required for finding a violation of Rule 8.4(c), ORPC, plainly, respondent had to know her answer was false, having paid herself over $27,000.00 after Edith's death. An attorney's knowing false statement of material fact during a deposition taken on behalf of the OBA during a disciplinary proceeding constitutes a violation of Rule 8.1(a), ORPC. *See State ex rel. Oklahoma Bar Ass'n v. Bolusky,* 2001 OK 26, ¶¶ 12–13, 23 P.3d 268, 274. Rule 8.1(a) provides in pertinent part, "a lawyer . . . in connection with a disciplinary matter, shall not . . . knowingly make a false statement of material fact." Obviously, the deposition testimony that, in effect, denied any payments from estate money is material as it relates to the propriety of the payments she was unilaterally making to herself. Thus, even though Rule 8.1(a) was not listed in the complaint, the stipulations or the PRT report, at a minimum, the false deposition testimony constituted a violation of that Rule. Thus, as to count IV we conclude the OBA carried its burden to show violations of Rule 5.2, RGDP and of Rules 8.1(b) and 8.4(c), ORPC. Further, even assuming there was some deficiency as to the proof as to the Rule 8.4(c) violation, the false deposition testimony constituted a violation of Rule 8.1(a), ORPC.

## PART IV. DISCIPLINE.

¶ 53 In *State ex rel. Oklahoma Bar Ass'n v. Taylor,* 2003 OK 56, 71 P.3d 18 the following was set forth concerning attorney misconduct cases and the factors to be considered to arrive at appropriate discipline:

In disciplinary proceedings this Court does not act as a reviewing tribunal, but as a licensing court in the exercise of our exclusive original jurisdiction. Our constitutional, nondelegable responsibility is to decide the appropriate discipline for an attorney found to have engaged in professional misconduct. [This] Court's duty in misconduct cases is to independently determine the proper discipline [warranted].

Our responsibility in such matters is exercised not for the purpose of punishing an offending lawyer, but to assess their continued fitness to practice law. The task must be performed to safeguard the interests of the public, the courts and the legal profession. Before arriving at appropriate discipline, however, we must also consider the deterrent effect upon both the offending respondent and other attorneys who might contemplate similar conduct in the future. Other properly considered factors are comparing the circumstances in the matter at hand with previous disciplinary matters, and examining an attorney's past record of professional behavior. Mitigating circumstances, of course, may also be considered in gauging the proper measure of discipline. Finally, though discipline should be administered fairly, i.e., evenhandedly, we have recognized that the extent of discipline must be decided on a case-by-case basis as each situation usually involves different transgressions and mitigating circumstances.

*Taylor,* 2003 OK 56, at ¶¶ 21–22, 71 P.3d at 28–29 (citations omitted).

¶ 54 As is often the situation, we have found no case that provides the exact duplicate of the circumstances involved here.[26] However, certain cases provide, at least, some guidance. In *State ex rel. Oklahoma Bar Ass'n v. Keeran,* 1972 OK 50, 495 P.2d 399, a case where no previous discipline was involved, the attorney was suspended for twelve (12) months for admittedly commingling funds of an estate with his own by preparing checks for payment to himself of partial attorney fees (without application to or approval of the court), having the execu-

---

26. We note the facts here do not warrant a finding, and the OBA does not allege, respondent's conduct involved misappropriation of any funds, i.e., theft by conversion or otherwise. We stated the following regarding such misconduct in *State ex rel. Oklahoma Bar Ass'n v. Meek,* 1994 OK 118, 895 P.2d 692, 698:

This happens when an attorney purposely deprives a client of money by way of deceit and fraud. Lawyers found guilty of intentionally inflicting grave economic harm through mishandling of client funds are guilty of this offense. A finding that the attorney intentionally committed such an act requires imposition of the harshest discipline—disbarment.

(footnote omitted). Rule 1.4(c), RGDP requires disbarment of an attorney for theft by conversion or otherwise of the funds of a client.

trix of the estate sign the checks and, in the final analysis, the fees paid were more than allowed by the court in the estate final accounting order. The attorney in *Keeran* was also found to have made deliberate falsehoods/misrepresentations to another attorney that had been hired to recover the overpayment of attorney fees. In *State ex rel. Oklahoma Bar Ass'n v. Brewer*, 1999 OK 101, 998 P.2d 605, an attorney who had once before been privately reprimanded for failure to respond to the Office of the General Counsel of the OBA in connection with a grievance that was ultimately found not to be a cause for discipline, was subject to a public reprimand for neglect in a probate case and a bankruptcy matter, and failing to respond in the disciplinary process in violation of Rule 5.2, RGDP. In *State ex rel. Oklahoma Bar Ass'n v. Latimer*, 1972 OK 106, 499 P.2d 399, where no prior disciplinary history is noted, the attorney was suspended for three months for neglect in two related probate matters, including failing to make annual accountings as statutorily required, failing to file a final account and petition for distribution and discharge until after numerous requests to do so had been made. In *State ex rel. Oklahoma Bar Ass'n v. Meek*, 1994 OK 118, 895 P.2d 692, an attorney having no previous disciplinary record was suspended for one year for commingling and converting client funds and knowingly misrepresenting facts surrounding the grievance lodged against her to the OBA.[27]

¶ 55 Plainly, in view of respondent's previous discipline in the form of a private reprimand by the PRC for neglect in two probate cases and failing to respond to the grievance lodged against her as to one of the matters, and the totality of the misconduct involved here, a one year suspension would be warranted. Clearly, neither a three month suspension as the PRT recommends or a public reprimand, which the OBA asserts in its August 2004 brief would be the minimum required discipline, are appropriate disciplinary sanctions given the above cases and the totality of the misconduct involved. Giving due consideration to this matter, we believe the appropriate discipline to be a six month suspension.

¶ 56 We reject a suspension for one year because we simply cannot discount or ignore the fact that our review of the record convinces us the Bakers wanted respondent to have the mineral interests and none of her actions, in the final analysis, financially harmed any other beneficiary. Her misconduct, however, cannot be minimized, nor can the harm to the reputation of the legal profession caused thereby, which we believe would be the case if only a public reprimand or a three month suspension were imposed. We determine a six month suspension from the practice of law is the appropriate discipline and that a suspension for that length of time is sufficient to foster the goals and purposes to be served in attorney disciplinary cases.

27. Other cases showing a range of discipline in attorney misconduct matters having, at least, some similarity to one or more components or Rule violations as the current case exist. *See e.g., State ex rel. Oklahoma Bar Ass'n v. Benefield (Benefield II)*, 2005 OK 75, 125 P.3d 1191 (attorney twice previously disciplined, once by a private reprimand from the Professional Responsibility Commission (PRC) for neglecting a client matter and failing to respond to the OBA in regard to the grievance and once by this Court by a sixty (60) day suspension for three counts of client neglect and one count of failing to respond to the OBA's request for information regarding the grievances, was suspended for one year for two subsequent counts of client neglect); *State ex rel. Oklahoma Bar Ass'n v. Benefield (Benefield I)*, 2002 OK 37, 51 P.3d 1198 (sixty (60) day suspension noted in *Benefield II* parenthetical); *State ex rel. Oklahoma Bar Ass'n v. Giessmann*, 1997 OK 146, 948 P.2d 1227 (attorney twice previously disciplined for neglect given ninety (90) day suspension for failing to act with reasonable diligence in representing client and failing to keep the client reasonably informed); *State ex rel. Oklahoma Bar Ass'n v. Johnston*, 1993 OK 91, 863 P.2d 1136 (attorney with no previous disciplinary record given four month suspension for one count of commingling and simple conversion of client funds, making non-material false statement to tribunal, professional incompetence, failure to act promptly on behalf of clients and to communicate with clients); *State ex rel. Oklahoma Bar Ass'n v. Brown*, 1989 OK 75, 773 P.2d 751 (attorney with no previous disciplinary record given six month suspension for falsely endorsing check payable to client, failing to promptly notify client of receipt of funds previously held by court, affirmatively misleading client concerning distribution of funds and lying under oath in deposition during OBA investigatory process).

¶ 57 Accordingly, **RESPONDENT, HELEN FRANCES BESLY IS SUSPENDED FROM THE PRACTICE OF LAW FOR SIX MONTHS FROM THE DATE THIS OPINION BECOMES FINAL AND IS ORDERED TO PAY THE COSTS OF THIS DISCIPLINARY PROCEEDING IN THE AMOUNT OF $1034.61 WITHIN NINETY (90) DAYS FROM THE DATE THIS OPINION BECOMES FINAL.**[28]

¶ 58 WINCHESTER, V.C.J., LAVENDER, HARGRAVE, OPALA, EDMONDSON and COLBERT, JJ., concur.

¶ 59 WATT, C.J., concurring in part; dissenting in part.

**I would impose a lesser degree of discipline upon the respondent.**

¶ 60 KAUGER, J., concurring in part; dissenting in part.

**I would follow the recommendation of the PRT.**

¶ 61 TAYLOR, J., dissenting.

**I would impose a one year suspension.**

---

**28.** Rule 6.16, RGDP provides that where discipline is imposed, the costs of the investigation, record and disciplinary proceedings shall be surcharged against the disciplined lawyer, unless remitted for good cause by this Court. No good cause for remission has been shown. Rule 6.16 also provides that failure of a disciplined lawyer to pay the costs within ninety (90) days after the effective date of an order imposing discipline "shall result in automatic suspension from the practice of law until further order of [this] Court."